Guillermo SAMANIEGO–
HERNANDEZ, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A05–0505–CR–309.

Court of Appeals of Indiana.

Dec. 30, 2005.

Bridgette F. Greene, Elkhart, for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Following a jury trial, Appellant–Defendant Guillermo Samaniego–Hernandez ("Samaniego") appeals his conviction for possession of cocaine weighing three grams or more with intent to deliver, a Class A felony.[1] We affirm.

---

1. Ind.Code § 35–48–4–1.

## Issues

Samaniego presents three issues for review, which we restate as:

I.  Whether the trial court properly admitted evidence that Samaniego entered into a "controlled buy" prior to execution of the resulting search warrant;

II.  Whether the evidence is sufficient to sustain the verdict; and

III.  Whether Samaniego's sentence is appropriate in light of aggravating and mitigating circumstances.

## Facts and Procedural History

The facts most favorable to the verdict follow. Juanita Sanchez ("Sanchez"), who had previously been convicted of delivering cocaine and who was consequently serving a sentence of six years at the department of correction, was acting as an informant for the Drug Unit of the Goshen Police Department. She had arranged a "controlled buy"[2] of cocaine with Samaniego's wife and, on the evening of September 2, 2004, was driven by an undercover officer to Samaniego's residence at 605 Mill Street to make the purchase. She entered the home and sat on a chair while Samaniego and his wife both sat on the couch nearby. After Sanchez showed the purchase money, Samaniego pulled the cocaine out of his sock and handed it to his wife, who then handed it to Sanchez. Samaniego's wife collected the money from Sanchez and passed it to Samaniego, who put it in his pocket. Sanchez left the residence, returned to her waiting ride, and gave the cocaine to the waiting officer.

Later that evening, officers of the Goshen Police Department obtained a search warrant for Samaniego's house. They executed the warrant the next evening. As they approached the residence, Samaniego was on the front porch. Officers ordered him to the ground, secured him, and then entered the residence, where they found four individuals on the first floor and three on the second floor. After securing those individuals, the officers searched the home and found the following items in the master bedroom, all of which (or pictures of which) were entered into evidence at trial: an electronic scale, the corner of a clear plastic bag found in an ash tray next to the scale, a rolled one dollar bill with traces of a white powdery residue, several pieces of "evidence of domain" (items containing Samaniego's name and address) (Tr. at 151) located within his wallet in the same dresser drawer as the rolled dollar bill, a box of plastic sandwich bags located behind an ottoman and containing clear plastic bags with a residue of a white powdery substance, another sandwich bag box containing a plastic bag and a white plastic spoon, three plastic bags containing a white rock-like powdery substance, and another box of sandwich bags found under the dresser. One of the bags found contained 1.18 grams of cocaine and another bag contained 24.84 grams of cocaine.

The State charged Samaniego with Class A felony possession of cocaine weighing more than three grams with the intent to deliver. On April 4, 2004, the trial court denied Samaniego's motion in limine and Samaniego repeated his objection at trial. Following trial, the jury found him guilty as charged.

On May 5, 2005, the trial court sentenced Samaniego to thirty-five years, which sentence was to run consecutively to

---

2.  A "controlled buy" was described by Lieutenant Shawn Turner of the Goshen Drug Unit as a method in which an informant is usually fitted with a transmitting device (i.e., a wire) and monitored by police officers while he or she purchases narcotics with money given and previously copied by the police.

an unrelated case. The greater-than-presumptive sentence was based upon mitigators (Samaniego's age of twenty-seven and his lack of prior felony convictions) being outweighed by aggravators (his status as an illegal alien; his prior misdemeanor conviction; documents which, if found to be true, would demonstrate Samaniego's use of unlawful identification; and the fact that Samaniego committed the instant offense while on probation). Samaniego now appeals.

Additional facts are given below as they pertain to the issues discussed.

### Discussion and Decision

#### I. Admission of Evidence

■ Samaniego first claims that the trial court improperly admitted evidence of his involvement in the "controlled buy" of September 2. In particular, he claims that his involvement should be characterized as prior bad act evidence that should be excluded under Indiana Evidence Rule 404(b). We disagree.

■ A trial court's evidentiary rulings are reviewed for an abuse of discretion, which occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Howard v. State*, 816 N.E.2d 948, 960 (Ind.Ct. App.2004). Indiana Evidence Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . . [3]

Rule 404(b) is meant to prevent the State from punishing people for their character.

*Bassett v. State*, 795 N.E.2d 1050, 1053 (Ind.2003). Evidence of extrinsic offenses endangers the defendant of being convicted because he or she is a person of bad character generally, or has criminal tendencies. *Id.* The rationale for the prohibition against bad act and character evidence is "predicated upon our fundamental precept that every defendant should only be required to defend against the specific charges filed." *Oldham v. State*, 779 N.E.2d 1162, 1173 (Ind.Ct.App.2002), *trans. denied.*

■ In determining the admissibility of extrinsic act evidence under Evidence Rule 404(b), courts must first determine whether the evidence is relevant to a matter at issue other than the person's propensity to perform a wrongful act, and the court must then balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403. *Camm v. State*, 812 N.E.2d 1127, 1131 (Ind.Ct.App.2004), *trans. denied.* As to the relevance determination, evidence is inadmissible if offered to prove the defendant's propensity to commit the crime, but "[e]vidence of uncharged misconduct which is probative of the defendant's motive and which is inextricably bound up with the charged crime is properly admissible under [Evidence Rule] 404(b)." *Willingham v. State*, 794 N.E.2d 1110, 1116 (Ind.Ct. App.2003) (internal quotations omitted). Additionally, otherwise inadmissible evidence may become admissible where the defendant "opens the door" to questioning on that evidence. *Jackson v. State*, 728 N.E.2d 147, 152 (Ind.2000). The evidence relied upon to "open the door" must leave the trier of fact with a false or misleading impression of the facts related. *Id.*

---

3. Rule 404(b) also requires the prosecution in a criminal case, if requested by the accused, to provide reasonable notice, before or during trial, of the general nature of the evidence it intends to introduce. Here, Samaniego does not argue that this requirement was not met.

Here, Samaniego explained in his opening statement that, when the officers arrived at his home on September 3, 2004, to execute their search warrant, they subsequently encountered numerous individuals on both the first and second floors, a number of which "were in the proximity or the direct location of all of the various items that were found . . . ." (Tr. at 33) Throughout trial, Samaniego cross-examined witnesses to show that he had nothing to do with the cocaine. For instance, he attempted to show that, during the controlled buy, the only reason police informant Sanchez had any contact with him was because of Sanchez's contact with his wife. He then attempted to show that, because he had been detained throughout the execution of the search warrant, he could not have been in possession of a sock containing cocaine; the sock turned up in an area of the backyard after officers had previously examined that area and found nothing. In short, Samaniego fostered the impression that he knew nothing about the cocaine found in his home and therefore could not have possessed the requisite elements of knowledge and intent to deliver it. That this impression was intentionally fostered is clearly supported by Samaniego's closing argument as well as his statements to the judge during trial.[4]

For these reasons, we believe that evidence of the controlled buy was not introduced solely to prove the forbidden inference of Samaniego's propensity to commit the charged crime. Rather, Samaniego put his knowledge of the cocaine at issue, thereby "opening the door" to the admissibility of evidence from the controlled buy. That evidence was admissible to challenge the impression that Samaniego could not have had knowledge of the cocaine found in his home.[5]

■ Although the evidence of Samaniego's prior uncharged misconduct was relevant to show knowledge, it may still be inadmissible under the second prong of the 404(b) test if its probative value is substantially outweighed by the danger of unfair prejudice pursuant to Indiana Rule of Evidence 403. *Iqbal v. State*, 805 N.E.2d 401, 408–09 (Ind.Ct.App.2004). A decision regarding prejudice is within the sound discretion of the trial court, and its decision is afforded a great deal of deference on appeal. *Sandifur v. State*, 815 N.E.2d 1042, 1048 (Ind.Ct.App.2004), *trans. denied.* We only reverse upon a showing that the trial court manifestly abused its discretion and the defendant was denied a fair trial. *Id.*

■ "[A]ll relevant evidence is inherently prejudicial in a criminal prosecution, so the inquiry boils down to a balance of probative value against the likely unfair prejudicial impact the evidence may have on the jury." *Richmond v. State*, 685 N.E.2d 54, 55–6 (Ind.1997) (internal quota-

4. In particular, two statements were made to the judge outside the presence of the jury. First, Samaniego contended that "he did not have any knowledge of these drugs and was not certainly going to deliver any drugs that he had no knowledge of." (Tr. at 12) Second, Samaniego argued that the "whole theory in the case is [that he] was not responsible for any of the [drugs] that were found in the residence." (Tr. at 179)

5. We are careful to note here that, although Samaniego put both his knowledge and intent at issue, the evidence was admissible only as a challenge to his lack of knowledge. He did not affirmatively offer some contrary intent with regard to the cocaine but rather merely denied any intent at all due to his lack of knowledge in the first place. *See Wickizer v. State*, 626 N.E.2d 795, 799 (Ind.1993) (the intent exception of Ind. R. Evid. 404(b) is available where a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent).

tions omitted). As discussed, the evidence here is highly probative to challenge the impression that Samaniego did not have knowledge of the cocaine found in his home. Therefore, we cannot say that the trial judge manifestly abused his discretion and denied the defendant a fair trial.

## II. Sufficiency of Evidence

■■■■ Samaniego next argues that the evidence is insufficient to support the verdict. When reviewing a claim of insufficient evidence, "we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Wright v. State*, 828 N.E.2d 904, 906 (Ind.2005) (quoting *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind.2004)). "It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling." *Id.* (internal citation omitted). "Circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *Pratt v. State*, 744 N.E.2d 434, 437 (Ind.2001).

Samaniego relies, to his own detriment, on *Robinson v. State*, 634 N.E.2d 1367, 1374 (Ind.Ct.App.1994) for the propositions that the State failed to (a) meet its burden of establishing the weight of the cocaine in excess of three grams, and (b) prove that the scales were calibrated before and after use. In *Guadian v. State*, 743 N.E.2d 1251, 1253 (Ind.Ct.App.2001), *trans. de-*

*nied,* this Court expressly recognized the pertinent rule from *Robinson:* the State has the initial burden to prove, before and after use, the accuracy of scales used to weigh illicit substances, and then the defendant has the burden to disprove that accuracy. However, we went on to state that, while relevant evidence is generally admissible, "[i]t is the responsibility of the party opposing admission of relevant evidence to show why it should be excluded." *Id.* at 1254. The rationale for this requirement is to prevent a defendant from sitting idly by while error is committed and then later trying to take advantage of that error when it could have been corrected at trial. *Id.* This policy favors a speedy correction of prejudicial errors and consequently saves judicial resources. *See, id.*

In the case at bar, Kristi Davis ("Davis"), a drug chemist at the Fort Wayne Regional Laboratory, testified that the net weight[6] of cocaine in State's Exhibit 3 was 1.18 grams, and the net weight of cocaine in State's Exhibit 38 was 24.84 grams. Davis testified that she documented these results in certificates of analysis, which certificates were then marked as State's Exhibits 46 and 47, respectively. Samaniego made no objection to any of this testimony. Only when the State moved to admit these four exhibits did Samaniego object to State's Exhibit 47 on the grounds that it had been partially redacted. The court overruled the objection since the remaining portion of the exhibit related only to State's Exhibit 38.

In short, Samaniego made no objection to the State's foundation regarding the accuracy and calibration of the scales used. The scale's accuracy is not an element of the crime but is instead foundational evidence. *Guadian*, 743 N.E.2d at 1255.

---

**6.** Davis testified that "net weight" refers to the weight of the substance only, whereas "aggregate weight" or "gross weight" refer to the weight of the substance plus the weight of the packaging/container holding the substance. (Tr. at 214)

Since Samaniego failed to object at trial to the lack of foundation, he is prevented from now taking advantage of that silence. *Id.* The trial court thus committed no error in admitting evidence of the cocaine's weight. Davis's testimony and the exhibits admitted into evidence indicate that the weight of cocaine in this case is 26.02 grams (1.18 grams + 24.84 grams). The evidence is sufficient to support the verdict.

### III. Sentencing

Samaniego's final argument is that the trial court erroneously enhanced his sentence based upon its findings of aggravators and mitigators.

The applicable statute at the time of Samaniego's offense provided: "A person who commits a Class A felony shall be imprisoned for a fixed term of thirty (30) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances...."[7] We recognize that the amendments to this statute were made effective prior to the May 5, 2005, sentencing hearing in this case. However, this change in the statute is procedural rather than substantive. *See Ritchie v. State*, 809 N.E.2d 258, 264 (Ind. 2004) (amendment to statute that neither changes elements of the crime nor enlarges its punishment is procedural in nature rather than substantive, and may therefore be applied to crimes committed before the effective date of the amended statute). Therefore, we analyze this issue under the amended statute that provides for advisory rather than presumptive sentences.[8] Because the new sentencing statute provides a range with an advisory sentence rather than a fixed or presumptive sentence, a lawful sentence would be one that falls within the sentencing range for the particular offense. But where the trial court at sentencing hears evidence of mitigators and aggravators, we will review these findings for an abuse of discretion. *Stout v. State*, 834 N.E.2d 707, 710 (Ind.Ct.App. 2005), *trans. denied.* Moreover, where the sentence is challenged under Indiana Appellate Rule 7(B), we will review the sentence based upon the nature of the offense and the character of the offender. Our review under Appellate Rule 7(B) is extremely deferential to the trial court as to whether the sentence is inappropriate. *Pennington v. State*, 821 N.E.2d 899, 903 (Ind.Ct.App.2005).

In the case at bar, Samaniego contends that the trial court abused its discretion in failing to consider certain mitigators. However, we decline to acknowledge Samaniego's claims. "A defendant who fails to raise proposed mitigators at the trial court level is precluded from advancing them for the first time on appeal." *Id.* at 905.

Samaniego first argues that "[t]he presentence investigation indicates the defendant had approximately five and one-half years of education in Mexico. The trial court erroneously failed to acknowledge this as a mitigating circumstance." (Appellant's Br. at 5) To the contrary, Samaniego erroneously failed to draw this

---

7. Ind.Code § 35–50–2–4 (2004).

8. Subsequent to the decision in *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied*, our Legislature amended Indiana's sentencing statutes by, inter alia, replacing presumptive sentences and fixed terms with advisory sentencing schemes. *Cotto v. State*, 829 N.E.2d 520, 524 n. 2 (Ind.2005). Indiana Code Section 35–50–2–4 was amended effective April 25, 2005, to read as follows: "A person who commits a Class A felony shall be imprisoned for a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years...."

potential mitigator to the trial court's attention. Instead, he merely acknowledged that he had a chance to review the presentence report and that, except for a couple corrections irrelevant to his arguments now, it was accurate in every respect. When asked if he had anything else to say, Samaniego proposed several mitigators but said nothing about his education.

■ Next, Samaniego claims that the trial court should have found his illegal alien status to be a mitigator instead of an aggravator. At trial, the State advanced this as an aggravator but, again, Samaniego did not propose it as a mitigator.[9] Because he failed to raise these arguments for the first time at trial, he is precluded from advancing them now.

■ Waiver notwithstanding, we find no sentencing error. It is within a trial court's discretion to decide both the existence and the weight of a significant mitigating circumstance. *Pennington*, 821 N.E.2d at 905. Consequently, a sentencing court abuses its discretion by overlooking a mitigating circumstance only when there is substantial evidence in the record of significant mitigating circumstances. *Id.* Although the court must consider evidence of mitigating factors presented by a defendant, it is not required to find that any mitigating circumstances actually exist, nor is it obligated to explain why certain circumstances are not sufficiently mitigating. *Id.* Furthermore, the court is not compelled to credit mitigating factors in the same way as would the defendant. *Id.* On appeal, an allegation that the trial court failed to identify or find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both

significant and clearly supported by the record. *Id.*

■ Here, Samaniego failed to argue that his illegal alien status should be a mitigating factor. In addition, being an illegal alien is itself more properly viewed as an aggravator than as a mitigator. *See, e.g., Yemson v. U.S.*, 764 A.2d 816, 819 (D.C.App.2001) (in sentencing a criminal defendant, court cannot treat defendant more harshly than any other citizen solely due to his national origin or alien status, but that does not mean that court must close its eyes to defendant's illegal alien status and disregard for the law, including immigration laws). Consequently, we cannot say that there was substantial evidence in the record of a significant mitigating circumstance. Therefore, the trial court did not abuse its discretion.

Finally, to the extent Samaniego challenges his sentence under Appellate Rule 7(B) as "inappropriate," our review of the record does not disclose any basis upon which to grant relief relative to his character or the nature of the offense.

### Conclusion

Based upon the foregoing discussion, we conclude that the trial court properly admitted evidence of Samaniego's involvement in the "controlled buy" prior to execution of the resulting search warrant, the evidence is sufficient to sustain the verdict, and Samaniego's sentence is lawful and is not inappropriate.

Affirmed.

BAKER, J., and NAJAM, J., concur.

---

9. On appeal, Samaniego argues that, since he would be subjected to the severe penalty of deportation if convicted of a felony while U.S. citizens would not, his status as an illegal alien is more appropriately viewed as a mitigating circumstance than as an aggravating one.