Brad LONG, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 67A01–0607–CR–273.

Court of Appeals of Indiana.

May 7, 2007.

Joseph M. Cleary, Hammerle Allen & Cleary, Indianapolis, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Brad Long appeals the twenty-year sentence imposed by the trial court after Long pled guilty to voluntary manslaughter, a Class B felony. Specifically, he argues that the trial court abused its discretion in identifying aggravating and mitigating circumstances and that his sentence is inappropriate in light of the nature of his offense and his character. Following *McMahon v. State,* 856 N.E.2d 743 (Ind.Ct.App.2006), we review otherwise legal sentences under a single standard: inappropriateness. Finding that the trial court abused its discretion in identifying four of seven aggravating circumstances and that the nature of Long's offense and his character do not otherwise justify his significantly aggravated sentence, we conclude that his sentence is inappropriate and revise it to a term of fifteen years.

### Facts and Procedural History

Long, who was forty-two, owned a home in Putnam County and lived there with his boyfriend, Kelcey Sullivan ("Sullivan"), who was twenty-two. On November 19, 2005, the two were at a bar together in Indianapolis. At some point during the night, the manager of the bar, Charles Miller III ("Miller"), found Long and Sullivan behind a closed curtain and noted that Sullivan appeared to have been crying. Miller asked if everything was all right, and Long said, "Kelcey thinks I don't love him." Appellant's App. p. 65. Miller saw Sullivan again at approximately 3:00 a.m. Sullivan appeared to be intoxicated and stated that he could not find Long. Miller helped Sullivan back to Miller's apartment so that Sullivan could sleep then returned to the bar to close it for the night. Records indicate that Long paid his bar tab with a credit card at 3:05 a.m. Long arrived home sometime after 4:00 a.m. When Miller finished closing the bar, he gave Sullivan a ride to Long's house. Sullivan arrived at approximately 5:00 a.m.

At 5:59 a.m., Long left a message on the cell phone of Dusty Ferguson ("Ferguson"), Long's ex-boyfriend who had also been at the bar the previous night. On the message, Long was talking to Sullivan about their relationship, and at times, Long spoke as if Ferguson had answered the phone. At 6:06 a.m., Long left another message on Ferguson's cell phone. Long sounded hysterical and asked Ferguson to call 911. At 6:16 a.m., Long left a third message on Ferguson's cell phone. Long again asked Ferguson to call 911 and said that he thought Sullivan was dead. At 6:17 a.m., Long called Ferguson on Ferguson's landline. The call lasted eleven minutes, until 6:28 a.m. Long told Ferguson that he had beaten Sullivan, that he thought he killed Sullivan, and that he was going to call 911. Long called 911 at 6:36 a.m. Medical personnel found Sullivan laying face up on the garage floor. Sullivan had injuries on his back and at the base of his skull. There were signs of a physical altercation in the house. Sullivan was later pronounced dead at the Putnam County Hospital. Autopsy photos of Sullivan showed multiple injuries consistent with strangulation.

Later on the morning of November 20, in his first conversation with police, Long claimed that he was asleep when Sullivan returned home and was awakened by a crash in the house. Long said that he found Sullivan injured on the floor and that he attempted to revive him. Finally,

Long stated that he moved Sullivan into the garage so that he could transport him to the hospital, but then decided that he needed assistance and called 911.

During their investigation, police discovered that Long had relayed a different story to Ferguson. Long told Ferguson that Sullivan arrived home on the morning of November 20, went into the spare bedroom where Long was sleeping, pulled back the covers, and, in an apparent reference to Ferguson, asked, "Where is he?" Long and Sullivan then went downstairs and argued, and at some point, Sullivan threw a ceramic pumpkin at Long. As Sullivan came after Long and prepared to hit him, Sullivan tripped over the lid of the ceramic pumpkin and Long struck him in the throat. Long then pinned Sullivan to the ground and beat him until he stopped moving.

The State charged Long with voluntary manslaughter.[1] Long pled guilty without the benefit of a plea agreement. A Guilty Plea/Sentencing Hearing was held on June 8, 2006. During the guilty plea portion of the hearing, Long admitted that he choked Sullivan to death. During the sentencing portion of the hearing, Detective Michael Biggs ("Detective Biggs") testified that "there's recorded complaints of occasions of altercations in Putnam County between [Sullivan] and [Long]." Tr. p. 32–33. According to Biggs, Long made those calls in an attempt to have Sullivan removed from his home. See id. at 33. Biggs also stated that during the course of his investigation, he discovered that between 2000 and 2002, Ferguson filed "ten separate police complaints" against Long. Id. Next, Biggs testified that at one time, Ferguson had a

no contact order or protective order against Long, but that Ferguson never "follow[ed] through on any prosecutions from his complaints to the police." Id. at 34. Finally, Biggs testified that he had interviewed Ferguson and that Ferguson claimed to have been choked by Long. See id. In addition, Sullivan's mother testified that Long called her home on the morning of Sullivan's death and said he did not know what happened to Sullivan. See Tr. p. 38.

In sentencing Long, the trial court identified seven aggravating circumstances: (1) the harm was significant; (2) it was a crime of violence (citing Ind.Code § 35–50–1–2); (3) Long was in a position of care, custody, and control with Sullivan; (4) Long had a history of violence; (5) Long had knowledge of his problem with violence and did not do anything to solve the problem; (6) Long did not tell Sullivan's family or police the truth; and (7) Long did not initially call police in a timely manner. The trial court also identified three mitigating circumstances: (1) Long's lack of criminal history; (3) Long accepted responsibility for the crime by pleading guilty; and (3) Long stayed in jail while the charge was pending. Finding that the aggravating circumstances outweighed the mitigating circumstances, the trial court sentenced Long to a prison term of twenty years, with eighteen years executed and two years suspended to probation. Long now appeals.

## Discussion and Decision

■ On appeal, Long contends that the trial court abused its discretion in finding, weighing, and balancing the aggravating and mitigating circumstances and that his sentence is inappropriate in light of the nature of his offense and his character.[2]

---

1. Ind.Code § 35–42–1–3(a).

2. Actually, Long claims that his sentence is "manifestly unreasonable." Appellant's Br. p. 16. Before January 1, 2003, Indiana Appellate Rule 7(B) provided: "The Court shall

not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." We remind Long that the rule has been amended and now provides: "The Court may revise a sen-

As an initial matter, we address the State's argument that we should not review Long's claims regarding the aggravating and mitigating circumstances. To support this assertion, the State notes that in 2005, the Indiana General Assembly amended Indiana Code § 35–38–1–7.1(d) (2006), which now provides that a trial court may impose any sentence that is authorized by statute and permissible under the Indiana Constitution "regardless of the presence or absence of aggravating circumstances or mitigating circumstances." The State argues that because trial courts are no longer required to identify aggravating and mitigating circumstances in imposing sentences, appellate courts should no longer review such findings when the trial court *does* make them.

■■■ Early interpretations by this Court of the amended version of Indiana Code § 35–38–1–7.1(d) do not support the State's position. To the contrary, this Court has held that in assessing the appropriateness of sentences under Indiana Appellate Rule 7(B), we should review the aggravating and mitigating circumstances identified, or not identified, by the trial court. *McMahon v. State,* 856 N.E.2d 743, 748 (Ind.Ct.App.2006) ("Even under the new statutes, an assessment of the trial court's finding and weighing of aggravators and mitigators continues to be part of our review on appeal."); *Gibson v. State,* 856 N.E.2d 142, 147 (Ind.Ct.App.2006) ("We will assess the trial court's recognition or nonrecognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed here was inappropriate."); *see also Samaniego–Hernandez v. State,* 839 N.E.2d 798, 805

(Ind.Ct.App.2005). However, the State is correct that a defendant may no longer bring a claim regarding aggravators and mitigators that is separate and independent from a claim that his sentence is inappropriate under Indiana Appellate Rule 7(B). *See McMahon,* 856 N.E.2d at 748–49. Rather, as long as a sentence imposed under this new scheme falls within the relevant statutory range, we review it under a single standard: inappropriateness. *Id.* at 752. The burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006).

Voluntary manslaughter is a Class B felony. Indiana Code § 35–50–2–5 provides, in pertinent part: "A person who commits a Class B felony shall be imprisoned for a fixed term of between six (6) and twenty (20) years, with the advisory sentence being ten (10) years." Here, the trial court sentenced Long to the maximum term of twenty years, with two years suspended to probation, for a total executed sentence of eighteen years. Long makes several arguments regarding his sentence, which we restate as: (1) four of the seven aggravating circumstances found by the trial court are either invalid or unsupported by the record; (2) the trial court failed to consider valid mitigating circumstances; and (3) the sentence is inappropriate in light of the nature of the offense and Long's character.

## I. Aggravating and Mitigating Circumstances

■■■ Before addressing Long's arguments, we must identify the appropriate

tence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The change in language is not simply a matter of semantics. Rather, our Supreme Court has made clear

that in changing the language of Indiana Appellate Rule 7(B), it "changed its thrust from a prohibition on revising sentences unless certain narrow conditions were met to an authorization to revise sentences when certain broad conditions are satisfied." *Neale v. State,* 826 N.E.2d 635, 639 (Ind.2005).

standard of review to be applied to a trial court's finding, weighing, and balancing of aggravating and mitigating circumstances. In *McMahon*, we held that we may no longer *reverse* a sentence only because a trial court abused its discretion in finding and weighing aggravating and mitigating circumstances. 856 N.E.2d at 749. However, in finding aggravating circumstances, refusing to find mitigating circumstances, and weighing and balancing those circumstances, a trial court necessarily exercises discretion. Therefore, determining whether a sentence is inappropriate under Indiana Appellate Rule 7(B) will often require us to review the trial court's exercise of its sentencing discretion. In doing so, we will continue to apply the familiar abuse of discretion standard. *See Leone v. State*, 797 N.E.2d 743, 748 (Ind.2003) (we will only set aside a trial court's sentencing decision "upon the showing of a manifest abuse of discretion."). Another panel of this Court has reached the same conclusion in discussing the new sentencing statutes. *See Samaniego–Hernandez*, 839 N.E.2d at 805 ("[W]here the trial court at sentencing hears evidence of mitigators and aggravators, we will review these findings for an abuse of discretion."). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances. *Krumm v. State*, 793 N.E.2d 1170, 1186 (Ind.Ct.App.2003). This standard, we believe, affords the proper level of deference to the often fact-sensitive sentencing determinations made by trial court judges. We turn now to Long's claims on appeal.

### A. Aggravating Circumstances

The trial court identified seven aggravating circumstances in sentencing Long: (1) the harm was significant; (2) it was a crime of violence (citing Ind.Code § 35–50–1–2); (3) Long was in a position of care, custody, and control with Sullivan; (4) Long had a history of violence; (5)

Long had knowledge of his problem with violence and did not do anything to solve the problem; (6) Long did not tell Sullivan's family or police the truth; and (7) Long did not initially call police in a timely manner. On appeal, Long does not challenge aggravators (3), (6), or (7). He does, however, challenge aggravators (1), (2), (4), and (5). The State concedes that aggravators (1) and (2) are invalid, as voluntary manslaughter always entails significant harm (loss of life) and violence. *See* Appellee's Br. p. 5–6. The parties dispute the validity of aggravators (4) and (5), i.e., that Long had a history of violence and that Long had knowledge of his problem with violence and did nothing about it.

During the sentencing hearing, the trial court cited as an aggravating circumstance "a history of violence that I see not only with Mr. Sullivan the deceased but also with [Long's] former partner Mr. Ferguson and a pattern continued of similar nature." Tr. p. 50. Long argues that the trial court abused its discretion in finding this aggravator because it is not supported by the record. We must agree.

Initially, we note that before this offense, Long had no criminal convictions of any kind, let alone convictions for violent behavior. Similarly, the record reflects that Long had no arrests of any sort before this incident. The trial court's finding that Long has a history of violence was entirely based upon the testimony of the investigating officer in this case, Detective Biggs. We find this testimony insufficient to support the trial court's finding in two respects.

First, Detective Biggs did testify regarding police reports concerning previous altercations between Long and Sullivan, the victim in this case. However, Detective Biggs also testified that those reports arose from calls by Long requesting that Sullivan be removed the house,

not vice versa. Second, Detective Biggs indicated that Long's ex-boyfriend, Ferguson, had made numerous complaints to the police against Long, had received a no contact order or protective order against Long, and stated that Long had choked him in the past. Significantly, however, none of these allegations resulted in Long's arrest or the filing of criminal charges or contempt proceedings against Long. Furthermore, Long did not testify at the sentencing hearing and did not have an opportunity to cross-examine Ferguson regarding the allegations. As such, we conclude that the evidence is insufficient to establish a history of violence. The trial court abused its discretion in finding this aggravator. *Compare Pickens v. State*, 767 N.E.2d 530 (Ind. 2002) (prior abuse of murder victim a proper aggravator where "the defendant [ ] testified at his sentencing hearing and had the opportunity and did question the family members on their accusations of abuse."). Likewise, because the other challenged aggravator, i.e., Long had knowledge of his problem with violence and did nothing about it, was based on the history of violence aggravator, it too constitutes an abuse of discretion.

### B. Mitigating Circumstances

■ In addition to the aggravating circumstances, the trial court identified three mitigating circumstances in sentencing Long: (1) Long's lack of criminal history; (2) Long accepted responsibility for the crime by pleading guilty; and (3) Long stayed in jail while the charge was pending. Long argues that the trial court abused its discretion in failing to find other valid mitigating circumstances. The trial court must consider all evidence of mitigating circumstances presented by a defendant. *Weaver v. State*, 845 N.E.2d 1066, 1072–73 (Ind.Ct.App.2006), *trans. denied.* However, the finding of mitigating circumstances rests within the sound discretion of the trial court. *Id.* at 1073. When a trial

court fails to find a mitigator clearly supported by the record, a reasonable belief arises that the trial court improperly overlooked that factor. *Banks v. State*, 841 N.E.2d 654, 658 (Ind.Ct.App.2006), *trans. denied.*

■ First, Long contends that the trial court abused its discretion in failing to find as a mitigating circumstance the undue hardship that his incarceration would create for his family. In support of his position, Long directs us to this Court's decision in *Antrim v. State*, 745 N.E.2d 246 (Ind.Ct.App.2001). There, we concluded that the trial court abused its discretion in failing to consider the undue hardship mitigator because there was evidence that the defendant was taking care of his wife, who had cerebral palsy, was providing support for two teenage children at home, and was paying child support for a third child. *Id.* at 248. Here, there is no such evidence. Long is not married and has no dependents. There is no evidence that Long is currently supporting his twenty-one-year-old son or his two former stepchildren, ages twenty-three and nineteen. The trial court did not abuse its discretion in refusing to consider this mitigator.

Second, Long argues that the trial court abused its discretion in failing to consider his remorse as a mitigating circumstance. Regarding a defendant's remorse, the Indiana Supreme Court has stated that the trial court's determination is similar to a determination of credibility. *Pickens*, 767 N.E.2d at 535. In the absence of evidence of some impermissible consideration by the trial court, we accept its determination of credibility. *Id.* We find no impermissible considerations. The trial court did not abuse its discretion in failing to consider this mitigator.

■ Third, Long claims that the trial court abused its discretion in failing to consider as a mitigating circumstance the

fact that he is likely to respond affirmatively to probation or short-term imprisonment. Long argues that the counseling that he needs to deal with his "role confusion over his homosexuality" will be unavailable in prison. Appellant's Br. p. 13. However, the record indicates that Long committed the instant offense *after* undergoing such counseling in 2003. *See* Appellant's App. p. 32 (Letter from Shelia R. Kirkman). As such, the trial court did not abuse its discretion in refusing to find that Long would respond affirmatively to probation or short-term imprisonment.

## II. Appropriateness of Long's Sentence

 Four of the seven aggravators relied upon by the trial court are invalid, leaving three aggravating circumstances— Long was in a position of care, custody, or control with Sullivan, Long did not tell Sullivan's family or police the truth, and Long did not initially call police in a timely manner—to be balanced against three mitigating circumstances—Long's lack of criminal history, Long accepted responsibility for the crime by pleading guilty as charged without the benefit of a plea agreement, and Long stayed in jail while the charge was pending. These findings by the trial court assist us in performing our ultimate task, which is to determine whether Long's sentence is inappropriate in light of the nature of his offense and his character. *McMahon*, 856 N.E.2d at 748; *Gibson*, 856 N.E.2d at 147; *see also* Ind. Appellate Rule 7(B).

Regarding the nature of the offense, it does appear that Long was, to some extent, in a position of control over the much younger Sullivan, but the importance of this fact is questionable considering that we are dealing with two competent adults. Furthermore, Long was slow in calling for help, and once emergency personnel arrived, Long was not honest with them. Nor was Long forthcoming when he first spoke with Sullivan's family. *See* Tr. p. 38. On the other hand, we cannot say that Long's actions were significantly more heinous than those involved in any voluntary manslaughter case. His crime was certainly violent, and the consequences tragic, but, as noted above, voluntary manslaughter always involves violence and loss of life. Although these facts are no doubt disturbing, they cannot be relied upon to justify an aggravated sentence.

As to Long's character, we cannot ignore the burst of violence that gave rise to this conviction. Likewise, Long admits that he needs counseling to help him deal with his anger issues. However, before this incident, Long had never been arrested for, charged with, or convicted of any crime. Furthermore, Long accepted responsibility for his crime by pleading guilty as charged without the benefit of a plea agreement and by staying in jail while the case was pending. Finally, twenty-three people, including Long's ex-boyfriend Ferguson, wrote letters detailing Long's positive character attributes. We are not persuaded that Long is a person of bad character, at least not to an extent that would justify the maximum sentence imposed by the trial court.

We agree with Long that the sentence imposed by the trial court is inappropriate, and we revise Long's sentence to a term of fifteen years.

Reversed.

BARNES, J., concurs.

BAILEY, J., concurs in result.