

FILED

Apr 11 2018, 10:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Derick W. Steele
Deputy Public Defender
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dion Cannon,

*Appellant-Defendant,*

*v.*

State of Indiana,

*Appellee-Plaintiff.*

April 11, 2018

Court of Appeals Case No.
34A05-1707-CR-1544

Appeal from the Howard Superior
Court

The Hon. William C. Menges, Judge

Trial Court Cause No.
34D01-1511-F2-1036

**Bradford, Judge.**

# Case Summary

[1] In November of 2015, police visited the Kokomo home that Appellant-Defendant Dion Cannon shared with Alexandra Linville to execute an arrest warrant on Cannon. While one officer knocked on the door, another watching through a window observed Cannon place something on a shelf before answering the door. After arresting Cannon and obtaining a search warrant, police searching the shelves found marijuana, a loaded handgun, and approximately eighty-eight grams of heroin inside a vase. During Cannon's trial on several charges, Linville testified over objection that she had assisted Cannon in dealing drugs prior to November of 2015 and that he sold heroin to support himself. The jury found Cannon guilty of Level 3 felony possession of a narcotic drug, Class A misdemeanor possession of marijuana, and Level 6 felony maintaining a common nuisance. The trial court sentenced Cannon to an aggregate sentence of fifteen years of incarceration. Cannon argues that the trial court abused its discretion in admitting Linville's testimony regarding prior drug-dealing activity, the trial court's final instruction regarding the evidence of other bad acts was ineffective, and his sentence is inappropriately harsh. Because we conclude that any error in the admission of evidence was harmless and that Cannon has not established that his sentence is inappropriate, we affirm.

# Facts and Procedural History

[2] On November 18, 2015, Cannon had been in a relationship with Linville for eight or nine years; shared a child born on December 4, 2013, with her; and lived with her in her Kokomo home. On November 18, 2015, Cannon went to Linville's place of business and borrowed $1800 from her (in addition to the $2200 he already had), money he told Linville he intended to spend on drugs. Later that evening, Kokomo Police Department officers went to Cannon and Linville's home to serve an outstanding arrest warrant on Cannon.

[3] When Kokomo Police Officer Jayson Maynard knocked on the door, Cannon, who was alone in the house at the time, yelled, "Oh s***, just a minute." Tr. Vol. I 56. From a window, Sergeant Gary Taylor observed Cannon take something from a counter, conceal it in his hand, and place it somewhere in a shelving unit near the door. When Cannon opened the door, officers detected the odor of burnt marijuana coming from within the residence. After Cannon was handcuffed and read his rights, Sergeant Taylor asked Cannon what he had put on the shelf. Cannon replied that "it was marijuana, and that's all the illegal drugs that [I have] in the house." Tr. Vol. I p. 57. Officers obtained a search warrant for the house.

[4] Inside a child's bedroom, officers found an AK-47 on a shelf in a closet. Officers found a handgun on a high shelf in a bathroom. On the shelving unit where Sergeant Taylor had observed Cannon place something, the police discovered a handgun with a long "banana clip" with extra rounds. Tr. Vol. I

p. 61. Police also found 16.23 grams of marijuana and a red vase that contained approximately 88 grams of heroin on the shelving unit. Another white substance, which appeared to be a possible cutting agent, was found in the house. A digital scale was found in a kitchen cabinet.

[5] On November 20, 2015, the State charged Cannon with Level 2 felony dealing in a narcotic drug, Level 3 felony possession of a narcotic drug, Level 5 felony neglect of a dependent, Level 6 felony theft of a firearm, Level 6 felony possession of marijuana, and Level 6 felony maintaining a common nuisance. On April 21, 2017, the State amended the charging information to reduce Cannon's possession of marijuana charge to a Class A misdemeanor. Jury trial was conducted on April 28, May 1, and May 2, 2017.

[6] Linville testified for the State at Cannon's trial. Over objection, Linville testified that she would assist Cannon in drug-dealing by "taking him places[,]"she had driven him someplace in August of 2015 to sell heroin, and he sold heroin and cocaine to support himself. Tr. Vol. I p. 136. The trial court allowed the testimony as relevant to the questions of Cannon's intent and knowledge. Linville also testified that she had never stored illegal drugs in the red vase and had never seen the heroin found inside the red vase before it was shown to her at trial. Among its other final instructions, the trial court instructed the jury that

> Evidence has been introduced that the defendant was involved in
> crimes, wrongful conduct or bad acts other than those charged in
> the Informations. This evidence has been received solely on the

issue of defendant's intent or knowledge. This evidence should be considered by you only for the limited purpose for which it was received.

Tr. Vol. II 32–33.

[7] The jury found Cannon guilty of Level 3 felony possession of a narcotic drug, Class A misdemeanor possession of marijuana, and Level 6 felony maintaining a common nuisance. On June 13, 2017, the trial court sentenced Cannon to fifteen years of incarceration for possession of a narcotic drug, one year for possession of marijuana, and two-and-a-half years for maintaining a common nuisance, all three sentences to be served concurrently.

# Discussion and Decision

## I. Evidence Concerning Other Bad Acts

[8] Cannon contends that the trial court abused its discretion in admitting testimony from Linville regarding other bad acts by him, specifically drug-dealing activity not charged in this case. We will only reverse a trial court's decision on the admissibility of evidence upon a showing of an abuse of that discretion. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002). An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182

(Ind. Ct. App. 2005). We do not reweigh the evidence and consider the evidence most favorable to the trial court's ruling. *Hirsey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006).

[9] Indiana Evidence Rule 404(b) provides that, in general, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." We need not address the merits of Cannon's evidentiary challenge if we conclude that "[e]rrors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of the defendant." *Goudy v. State*, 689 N.E.2d 686, 694 (Ind. 1997). "The erroneous admission of evidence is harmless error where a guilty finding is supported by substantial independent evidence of guilt." *Bates v. State*, 495 N.E.2d 176, 178 (Ind. 1986). "However, reversal is warranted if the record as a whole reveals that the improper evidence was likely to have had a prejudicial impact on the average juror such that it contributed to the verdict." *Sundling v. State*, 679 N.E.2d 988, 994 (Ind. Ct. App. 1997).

[10] We conclude that the admission of evidence of other bad acts, even if the result of an abuse of discretion,[1] can only be considered harmless. Although the heroin was not found on Cannon's person,

---

[1] While we conclude that we do not need to reach the question of whether the trial court abused its discretion in admitting evidence of other bad acts by Cannon, we acknowledge the dissent's extremely thorough and scholarly discussion of the issue.

[t]here is … no requirement that the accused's actual possession of the contraband must be shown to have existed at precisely the same time as the law enforcement agency's discovery of the contraband. Put another way, conviction for possessory offenses does not depend on the accused being "caught red-handed" in the act by the police.

*Wilburn v. State*, 442 N.E.2d 1098, 1101 (Ind. 1982).

[11] Cases, like this one, where the State seeks to prove that the defendant's possession of the contraband occurred at a time other than its discovery are referred to as "constructive possession" cases.

A defendant is in the constructive possession of drugs when the State shows that the defendant has both (i) the intent to maintain dominion and control over the drugs and (ii) the capability to maintain dominion and control over the drugs. *Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *on reh'g*, 685 N.E.2d 698 (Ind. 1997). The proof of a possessory interest in the premises on which illegal drugs are found is adequate to show the capability to maintain dominion and control over the items in question. *Davenport v. State*, 464 N.E.2d 1302, 1307 (Ind. 1984). In essence the law infers that the party in possession of the premises is capable of exercising dominion and control over all items on the premises. *See id.*; *Martin v. State*, 175 Ind. App. 503, 372 N.E.2d 1194, 1197 (1978) ("[A] house or apartment used as a residence is controlled by the person who lives in it and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee."). And this is so whether possession of the premises is exclusive or not.

However, the law takes a different view when applying the intent prong of constructive possession. When a defendant's possession of the premises on which drugs are found is not exclusive, then the inference of intent to maintain dominion and control over the

drugs "must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the controlled substances and their presence." *Lampkins*, 682 N.E.2d at 1275.

*Gee v. State*, 810 N.E.2d 338, 340–41 (Ind. 2004). A non-exhaustive list of what such additional circumstances may be includes "(1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant." *Gee*, 810 N.E.2d at 341 (citing *Henderson v. State*, 715 N.E.2d 833, 836 (Ind. 1999)).[2] As we have noted, "[i]n each of these instances of 'additional circumstances' exists the probability that the presence and character of the contraband was noticed by the defendant. Accordingly, the listed circumstances are not exhaustive. Other circumstances could just as reasonably demonstrate the requisite knowledge." *Carnes v. State*, 480 N.E.2d 581, 586 (Ind. Ct. App. 1985) (collecting cases that contain the "additional circumstances" comprising the list in *Gee*).

[12] Cannon does not dispute that he had a possessory interest in the house he shared with Linville, a fact sufficient to show his capability to maintain dominion and control over the heroin. Additional circumstances also point to

---

[2] We wish to emphasize that this list is nothing more than a collection of circumstances that have been found sufficient to prove constructive possession in particular cases, *not* a test with elements to be satisfied or factors to be weighed. In many cases, some or all of the listed circumstances will simply not be relevant.

Cannon's knowledge of the presence and nature of—and his intent to maintain dominion and control of—the heroin. First and foremost is Linville's incriminating testimony. Linville testified that Cannon received $1800 from her on November 18, 2015, and told her that he was planning on buying drugs with the money. Later that day, police executed a search warrant on the house that the couple shared and discovered a substantial amount of heroin, which Linville testified she had never seen before. It is reasonable to infer that the heroin was Cannon's and that he put it in the vase. Moreover, the heroin was found on a shelving unit very near other items that were Cannon's, including a handgun that Linville testified was his and marijuana that he admitted was his. While this evidence of Cannon's guilt would be enough by itself to render any error harmless, there is more.

[13] The jury was specifically instructed to use evidence of Cannon's other bad acts only for the purposes of evaluating his intent or knowledge, which is presumed to cure any error that might have occurred, unless Cannon can show otherwise, which he did not do. *See Hyppolite v. State*, 774 N.E.2d 584, 598 (Ind. Ct. App. 2002) ("The trial court gave the jury an admonishment concerning the situation, and that is presumed to cure any error."), *trans. denied*; *see also Hackney v. State*, 649 N.E.2d 690, 694 (Ind. Ct. App. 1995) ("A proper admonishment to the jury is presumed to cure any alleged error, unless the contrary is shown."), *trans. denied*. Cannon limits his challenge to the timing of the admonition, claiming that it was error to deliver it during final instructions. Cannon, however, offers no supporting authority for this challenge, and our research has

uncovered none. As for rebutting the presumption that the trial court's instruction cured any error, Cannon points to no indication in the record to suggest that the jury did not follow the trial court's instruction on this point, and our own review has uncovered none. Cannon has failed to establish that the trial court's admonition failed to cure any error that might have occurred. Given the substantial independent evidence establishing Cannon's guilt and the trial court's admonition to the jury, we conclude that any error the trial court may have made in admitting evidence of other bad acts can only be considered harmless.

## II. Appropriateness of Sentence

[14] This Court will revise a sentence authorized by statute only "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The question is not whether another sentence is more appropriate, but whether Cannon's sentence is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The "nature of the offense" refers to a defendant's actions in comparison with the elements of the offense. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The "character of the offender" refers to "general sentencing considerations and the relevant aggravating and mitigating circumstances." *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007).

[15] Cannon has the burden of proving that his sentence is inappropriate in light of the nature of the offense and his character. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "[Deference to trial courts] should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The trial court imposed an aggregate sentence of fifteen years of incarceration, with the sentencing range for a Level 3 felony (his most serious conviction) being three to sixteen years with nine as the advisory. *See* Ind. Code § 35-50-2-5(b).

[16] The nature of Cannon's offenses justifies his fifteen-year sentence. Cannon was convicted of heroin and marijuana possession and maintaining a common nuisance. Cannon possessed approximately eighty-eight grams of heroin, over three times the amount necessary to prove a Level 3 felony possession charge. *See* Ind. Code § 35-48-4-6(d)(1) (providing that, to be a Level 3 felony, the defendant must possess "at least twenty-eight (28) grams" of the narcotic drug). Cannon also possessed over sixteen grams of marijuana. Perhaps most disturbing, considering that Cannon shared his house with his not-yet-two-year-old child, was the presence of no fewer than three loaded firearms, including one that was found in the child's bedroom. The nature of Cannon's offenses justifies his enhanced sentence.

[17] Cannon's character, especially as revealed by his lengthy criminal history, also justifies his enhanced sentence. Cannon, born in September of 1988,

accumulated juvenile delinquency adjudications for habitual disobedience of a parent, guardian, or custodian; theft; and battery resulting in bodily injury and was taken into custody a total of eight times. (Appellant's App. Vol. II 124–26). As an adult, Cannon has prior convictions for two felonies and ten misdemeanors, including Class D felony marijuana possession, Class D felony operating a vehicle as a habitual traffic violator, Class A misdemeanor criminal trespass, Class A misdemeanor possession of marijuana/hash oil/hashish, Class A misdemeanor battery resulting in bodily injury, Class A misdemeanor driving never having received a license, Class B misdemeanor visiting a common nuisance, two counts of Class B misdemeanor public intoxication, two counts of Class C misdemeanor driving never having received a license, and Class C misdemeanor operating with blood alcohol concentration of 0.08 but less than 0.15. Cannon has been found to be non-compliant with provisions of community supervision on four occasions. As of sentencing in this case, Cannon has charges pending for four more felony drug-dealing charges, set to go to trial in June of 2017. Cannon admitted that he used marijuana and heroin daily before his arrest on November 18, 2015. In summary, Cannon's history, at the very least, indicates that he has serious issues with substance abuse that he has chosen not to address, despite his frequent contacts with the criminal justice system and recently becoming a father. In light of the nature of his offenses and his character, Cannon has failed to establish that his fifteen-year sentence is inappropriately harsh.

[18] We affirm the judgment of the trial court.

Crone, J., concurs.

Robb, J., dissents with opinion.

# COURT OF APPEALS OF INDIANA

Dion Cannon,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
34A05-1707-CR-1544

**Robb, Judge, dissenting**

[19] I respectfully dissent from the majority's conclusion that the admission of evidence of other bad acts "can only be considered harmless." Slip op. at ¶ 3. Because of the majority's disposition of case, they did not tread into the often-turbulent waters of Rule 404(b). However, because I conclude the evidence's admission was not harmless—I must.

# I. Admission of Rule 404(b) Evidence

[20] At trial, Linville was asked how she helped aid, induce, or caused Cannon to deal drugs, and she replied "[b]y taking him places." Tr., Amended Vol. I at 136. Cannon objected to Linville's statements, arguing that they violated Indiana Evidence Rule 404(b). The trial court overruled Cannon's objections and allowed the State to present the evidence in order to prove Cannon's intent

and knowledge under Rule 404(b)(2). Over Cannon's continuous objection, Linville testified to the following:

[State]: And what was the purpose in taking him?

[Linville]: For a drug sale.

[State]: And did he conduct a drug sale at that time?

[Linville]: Correct.

[State]: Do you know what type of drug it was?

[Linville]: At what point and what time?

[State]: When you drove him to the place where the drug sale took place, did you know what kind of drug it was?

[Linville]: I don't understand the question, I—

[State]: Well, what was he selling?

[Linville]: When though? I don't understand. I don't know when I was charged for aiding, inducing, what sale or when it was.

[State]: The aiding, inducing, causing charge was the one you were arrested for at the salon?

[Linville]: Correct.

[State]:            And you're telling me you don't recall the date of that event?

[Linville]:         When I got arrested, yes.

[State]:            No, no, no. When the actual sale took place?

[Linville]:         I thought there was a few of them.

[State]:            We're talking about things that took place in 2015, correct?

[Linville]:         Right.

[State]:            And did Mr. Cannon sell things, different kind [sic] of drugs?

[Linville]:         The—

[Defense Counsel]: Your Honor, I'm going to object, not only my continuous previous objection but also from preponderance standard which is definitely not met at this point.

[The Court]: Overruled.

[State]:            What type of drugs did he sell?

[Linville]:         Heroin and cocaine.

[State]:            Did you drive him to an event in August of 2015 when he sold heroin?

[Linville]:     Correct.

[State]:        Did Mr. Cannon have a job?

[Linville]:     No.

[State]:        How did he support himself?

[Linville]:     By selling drugs.

[State]:        Did you go with him on drug sales?

[Linville]:     Yes.

*Id.* at 147-48. Linville also confirmed that Cannon used the red vase on the shelving unit, stating "[s]ometimes money or sometimes drugs were in there." *Id.* 153.

[21]  Evidence Rule 404(b) states:

> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) *Permitted Uses; Notice in a Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. . . .

"The well established rationale behind Evidence Rule 404(b) is that the jury is precluded from making the 'forbidden inference' that the defendant had a criminal propensity and therefore engaged in the charged conduct." *Thompson v. State,* 690 N.E.2d 224, 233 (Ind. 1997). When a defendant objects to the admission of evidence on the ground that the evidence would violate Rule 404(b), we apply the following test:

> (1) The court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and

> (2) The court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.

*Id.*

[22] Evidence Rule 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

[23] Thus, if the "sole apparent purpose" of the evidence is to suggest the forbidden inference—that the defendant acted in conformity with that criminal character—the evidence is inadmissible. *Pierce v. State,* 29 N.E.3d 1258, 1269 (Ind. 2015). However, such evidence may be admissible for another purpose such as proof of motive, opportunity, intent, preparation, plan, knowledge,

identity, absence of mistake, or lack of intent if the evidence survives Rule 403 balancing. *Id.*

[24] Cannon argues neither intent nor knowledge were at issue for the admission of Linville's testimony and that the State's evidence created "exactly the type of inferences 404(b) is designed to prevent." Appellant's Brief at 10. In response, the State argues Linville's testimony was admissible to prove Cannon's intent and knowledge because Cannon placed those subjects at issue with questions during voir dire.

## A. Intent

[25] On appeal, the State comingles its arguments regarding intent and knowledge. However, they are two different permissible uses of Rule 404(b) evidence and must be considered separately. I begin with intent.

[26] In *Wickizer v. State,* 626 N.E.2d 795 (Ind. 1993), our supreme court elaborated on the intent exception of 404(b). There, the defendant was charged with child molestation and, over objection, the State presented evidence of the defendant's prior sexual conduct with other children. Thereafter, the defendant testified and admitted that while he did touch the victim's penis, he did so for a non-sexual purpose.[3] During final jury instructions, the trial court admonished the

---

[3] The charged offense included the element "with intent to arouse or to satisfy the sexual desires of either the child or the older person." *Id*. at 797 (citing Ind. Code § 35-42-4-3(d) (1981)).

jury that evidence of the defendant's prior sexual misconduct was "received solely on the issue of the defendant's depraved sexual instinct." *Id.* at 800.

[27] The defendant appealed and our supreme court accepted transfer "to address questions regarding the admissibility of prior conduct evidence under the 'intent' exception . . . ." *Id.* at 796. The court explained:

> Admission of prior uncharged misconduct infers that the defendant is of bad character and poses the danger that the jury will convict solely upon this inference. . . . However, because the mental state or culpability of a defendant is an element to be proven by the prosecution in virtually every criminal case, properly introduced evidence of intent typically is found to be relevant and of probative value and thus admissible at trial.

*Id.* at 797 (citation omitted). After reviewing various judicial perspectives on the admission of intent evidence, our supreme court concluded:

> Indiana is best served by a narrow construction of the intent exception in Evid. R. 404(b). It does not authorize the general use of prior conduct evidence as proof of the general or specific intent element in criminal offenses. To allow the introduction of prior conduct evidence upon this basis would be to permit the intent exception to routinely overcome the rule's otherwise emphatic prohibition against the admissibility of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith. In this context, admission of prior bad acts would frequently produce the "forbidden inference" cautioned against in [*Hardin v. State*, 611 N.E.2d 123, 129 (Ind. 1993)].
>
> The intent exception in Evid. R. 404(b) will be available when a defendant goes beyond merely denying the charged culpability

and affirmatively presents a claim of particular contrary intent. When a defendant alleges in trial a particular contrary intent, whether in opening statement, by cross-examination of the State's witnesses, or by presentation of his own case-in-chief, the State may respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely relevant to prove the defendant's intent at the time of the charged offense.

*Id.* at 799.

[28]     Here, the State appears[4] to argue that Cannon went beyond merely denying the charged culpability and affirmatively presented a claim of particular contrary intent because Cannon's defense was "that he did not know about the drugs in his house." State's Br. of Appellee at 15. I disagree.

[29]     In support of its argument, the State claims, "This Court has allowed evidence of prior dealing to show knowledge and intent where a defendant challenges his knowledge of the drug," and relies—to its own detriment—on *Samaniego-Hernandez v. State,* 839 N.E.2d 798 (Ind. Ct. App. 2005), *abrogated on other grounds by Anglemyer v. State,* 868 N.E.2d 482 (Ind. 2007) (*clarified on reh'g,* 875 N.E.2d 218 (2007)). State's Br. of Appellee at 14. There, although we held that it was not an abuse of discretion for the trial court to admit evidence of a controlled buy to show the defendant's knowledge, as discussed at greater length below, we cautioned:

---

[4] Because the State comingles its arguments regarding intent and knowledge, at times it is difficult to discern to which exception an argument applies. *See* State's Br. of Appellee at 14-16.

although Samaniego put both his knowledge and intent at issue, the evidence was admissible only as a challenge to his lack of knowledge. He did not affirmatively offer some contrary intent with regard to the cocaine but rather merely denied any intent at all due to his lack of knowledge in the first place. *See Wickizer v. State,* 626 N.E.2d 795 (Ind. 1993) (the intent exception of Ind. R. Evid. 404(b) is available where a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent).

*Id.* at 803 n.5.

[30] Similarly, here, the State argues Cannon's defense was simply that he did not know about the drugs. I believe this is a mischaracterization of Cannon's defense but, nevertheless, even assuming that were true, claiming a lack of knowledge is insufficient to affirmatively offer contrary intent. Therefore, I believe Linville's testimony was inadmissible under the intent exception of Evidence Rule 404(b). *See, e.g., Udarbe v. State,* 749 N.E.2d 562, 566 (Ind. Ct. App. 2001) (holding where defendant merely maintained his innocence and did not present a claim of particular contrary intent, admission of prior uncharged acts under the intent exception to Rule 404(b) was an abuse of discretion).

## B. Knowledge

[31] The trial court also admitted Linville's testimony under the knowledge exception to Evidence Rule 404(b). Knowledge, like intent, is one of the purposes for which evidence of other crimes, wrongs, or acts may be admitted. Such evidence is most commonly used to rebut the possibility that the

defendant was unaware that a criminal act was being committed. 12 Robert L. Miller, Jr., *Indiana Practice: Indiana Evidence,* § 404.203 (3d ed. 2007).

### *1. At Issue*

[32] Cannon argues—as he did with intent—that he never placed his knowledge at issue for admission of Rule 404(b) evidence. In response, the State maintains that Cannon placed his knowledge at issue with questions during voir dire.

[33] A threshold question is whether Indiana law requires knowledge to be placed at issue at all. Our supreme court explained that when a defendant objects to the admission of evidence on the ground that the evidence would violate Rule 404(b), the first step of our two-step inquiry is to "determine that the evidence of other crimes, wrongs, or acts is relevant to a matter *at issue* other than the defendant's propensity to commit the charged act. . . ." *Thompson,* 690 N.E.2d at 233 (emphasis added).

[34] A matter is "at issue" if it is relevant to the resolution of a case. Our system of criminal jurisprudence was built on a premise that "*actus non facit reum nisi means sit rea,* meaning an act does not make one guilty unless his mind is guilty." *U.S. v. Bates,* 96 F.3d 964, 967 (7th Cir. 1996), *affirmed by Bates v. U.S.,* 522 U.S. 23 (1997); *see also Morissette v. U.S.,* 342 U.S. 246, 251-52 (1952) (the concept of crime as a "concurrence of an evil-meaning mind with an evil-doing hand . . . took deep and early root in American soil."). Nearly all crimes, therefore, require "proof that the defendant not only committed a wrongful act, but that he did so with the requisite *mens rea*, or culpable mental state." *Bates,*

96 F.3d at 967; *see also Wickizer,* 626 N.E.2d at 797 ("[T]he mental state or culpability of a defendant is an element to be proven by the prosecution in virtually every criminal case . . . ."). To signify the common law requirement of mental culpability, legislatures have employed words such as "intentionally," "willfully," or "purposely." *Bates*, 96 F.3d at 967. These elements necessarily require that a defendant acted at least knowingly, that is, with knowledge of his or her actions. Thus, with the limited exception of strict liability offenses, a defendant's knowledge is always, at least nominally, "at issue."

[35]     In this regard, the knowledge exception is similar to the intent exception outlined in *Wickizer v. State.* There, as more thoroughly discussed above, *see* ¶ 9, *supra*, our supreme court explained that the intent exception to Rule 404(b) should be given a narrow interpretation. 626 N.E.2d at 799. Therefore, in order for intent to be placed at issue and for relevant Rule 404(b) evidence to be admissible, the defendant must go "beyond merely denying the charged culpability and affirmatively present[] a claim of particular contrary intent." *Id.*

[36]     Relying on *Wickizer,* we have previously held that—at least with respect to a defendant's knowledge of the wrongfulness of his actions—Rule 404(b) evidence is only admissible when the defendant affirmatively puts his knowledge at issue. *Whitehair v. State*, 654 N.E.2d 296, 302 (Ind. Ct. App. 1995). In *Whitehair*, the defendant was charged with receiving stolen property by purchasing a stolen ATV. The State sought to admit evidence of stolen tires in the defendant's garage to show that he also knew the ATV was stolen. The defendant argued he had not affirmatively placed his knowledge at issue and, in

turn, the State argued that the defendant's statement to police that he purchased the ATV but lacked a receipt and defense counsel's opening statement that the defendant must be "proven guilty of knowing [sic] and intentionally retaining the property of another person, that has been the subject of a theft[,]" was sufficient to put the defendant's knowledge at issue. *Id.* Describing the evidence as "a close call," we found the combination of the evidence placed the defendant's knowledge at issue and we concluded that the State was allowed to use "evidence of extrinsic acts of misconduct to show that [the defendant] was not a naïve purchaser, but rather knew that the ATV at issue had been the subject of a theft." *Id.*

[37]     Next, we applied the knowledge exception more broadly in *Samaniego-Hernandez*. There, as opposed to *Whitehair* where the issue was the defendant's knowledge of wrongfulness of his actions, Samaniego's trial strategy was to deny knowledge of the crime completely. Samaniego's home was the subject of a search warrant after Samaniego and his wife sold cocaine to a police informant. During the execution of the search warrant, Samaniego was handcuffed on the front porch and police located drugs and numerous individuals inside the home. At trial, Samaniego explained in his opening statement that those individuals "were in proximity or the direct location of all of the various items that were found . . . ." 839 N.E.2d at 803. And, throughout the trial, Samaniego "cross-examined witnesses to show that he had nothing to do with the cocaine[,]" intentionally fostering "the impression that he knew nothing about the cocaine[,]" which was "clearly supported by

Samaniego's closing argument as well as his statements to the judge during trial." *Id.*

> For these reasons, we believe that evidence of the controlled buy was not introduced solely to prove the forbidden inference of Samaniego's propensity to commit the charged crime. Rather, Samaniego put his knowledge of the cocaine at issue, thereby "opening the door" to the admissibility of evidence from the controlled buy. That evidence was admissible to challenge the impression that Samaniego could not have had knowledge of the cocaine found in his home.

*Id.*

[38] In *Baker v. State,* 997 N.E.2d 67 (Ind. Ct. App. 2013), we again broadly applied the knowledge exception. Baker was charged with the theft of approximately forty-five gallons of gasoline and presented an alibi defense. At trial, a State's witness testified that he and Baker had stolen gas "[l]ike two or three (2-3) times." *Id.* at 71. The State argued that it was "entitled to refute [Baker's alibi defense] by introducing evidence of prior offenses of the same nature to show [Baker's] knowledge, identity, and intent." *Id.* Concluding the evidence was not admissible under the knowledge exception to Rule 404(b), we explained:

> Nothing in the record indicates that Baker put his knowledge in issue. Baker did not claim that he believed that he was entitled to take the gasoline. Rather, he claimed that he was not involved in the alleged theft of the gasoline.

*Id.*

Federal Rule of Evidence 404(b) also requires a defendant to "meaningfully dispute" the non-propensity issue in order to justify the admission of Rule 404(b) evidence—including knowledge. *U.S. v. Miller,* 673 F.3d 688, 697 (7th Cir. 2012). In *Miller*, similar to the facts presented here, the defendant was on trial for possession with intent to distribute. The police found a large quantity of drugs packaged into smaller bags with price tags attached and, perhaps unsurprisingly, the defendant did not dispute his intent. Rather, the defendant argued the drugs belonged to his girlfriend. The court explained:

> The government argues that [the defendant's] prior conviction is relevant to prove intent here, but has not satisfactorily explained why this is true. Miller's defense, that the drugs were not his, has nothing to do with whether he intended to distribute them. He did not argue that he intended to consume rather than sell the drugs, or that he lacked knowledge of cocaine or how to sell it. Either argument would have better joined a genuine issue of intent or knowledge. Rather, the only conceivable link between the defense and intent here would also be true of almost any defense [the defendant] might raise; by pleading not guilty, [the defendant] necessarily contradicted the government's belief that he intended to distribute the drugs.

*Id.* at 698.

This court has previously cautioned that, "We must take care to ensure that Rule 404(b)'s exceptions do not swallow the rule." *Remy v. State*, 17 N.E.3d 396, 400 (Ind. Ct. App. 2014), *trans. denied*. Mindful thereof, I am convinced Indiana law requires that a defendant must first place their knowledge at issue before relevant evidence of prior crimes or bad acts is admissible under Rule

404(b). After all, the same concerns underlying the intent exception and the "forbidden inference" in our supreme court's decision in *Wickizer,* also haunt the knowledge exception. 626 N.E.2d at 799. And, as the Seventh Circuit explained in *Miller,* "if merely denying guilt opens the door wide to prior convictions for the same crime, nothing is left of the Rule 404(b) prohibition." 673 F.3d at 698. I therefore conclude in order for knowledge to be placed at issue, defendants must go beyond simply pleading not guilty—even though by doing so they necessarily contradict the State's allegation that they had knowledge of the crime—and affirmatively claim a lack of knowledge.

### 2. Voir dire

Having determined that a defendant must first affirmatively claim a lack of knowledge before Rule 404(b) evidence may be admitted, I turn to the question of whether Cannon placed his knowledge at issue. The trial court found—as the State now argues on appeal—that Cannon placed his knowledge at issue by posing "several questions that probed prospective jurors about lack of knowledge" during voir dire. State's Br. of Appellee at 15; *see* Tr., Amended Vol. I at 142-43. In turn, Cannon contends these questions were insufficient to place knowledge at issue, and that he never argued a lack of knowledge during the trial.

With the potential exception of questions during voir dire, which I discuss further below, Cannon did not affirmatively argue lack of knowledge during the

trial itself.[5]  Defense counsel's opening statement simply asked the jury to provide Cannon with the presumption of innocence, consider the motivation and purposes for witness testimony, and "at the end of the day return two (2) guilty verdicts and (4) not-guilty verdicts."[6]  Tr., Amended Vol. I at 49.  Although the State argues "Cannon asked questions on cross-examination that were meant to show that Cannon did not have knowledge about the drugs in the house[,]" State's Br. of Appellee at 15, I am unable to discern the specific questions to which the State refers and my review of defense counsel's cross-examination of the State's witnesses does not create that impression.  Similarly, I disagree with the State's assertion that Cannon continued to advance a theory of lack of knowledge in closing argument when he stated:

> The evidence as to his possession of this [heroin] comes from Ms. Linville. . . .  She agrees to come up here, point the finger at Mr. Cannon and say it's his fault, he's a bad person, he did it, blame him.  I'll get out of jail.  She gets to point the finger at the boyfriend that cheated on her.  She gets to get back at him, and that's what the State wants you to believe. . . .  On top of all that no one took the stand and said I saw Dion Cannon possess and touch 88 grams of heroin. . . .  She was the one that had the drugs, that knew about them, that bought the drugs, that had

---

[5] Voir dire is not part of a trial.  *Nix v. State*, 240 Ind. 392, 395-96, 166 N.E.2d 326, 327 (1960).  The trial does not begin until the jury is impaneled and the cause is submitted.  *Id.*

[6] Cannon was also convicted of maintaining a common nuisance and possession of marijuana but the defense admitted to these charges at trial and asked that the jury find Cannon guilty accordingly.  Tr., Amended Vol. I at 48.

access to the money that paid for the drugs. The reason she had firsthand knowledge was because they were her drugs.

Tr., Amended Vol. II at 19-23. I view Cannon's closing argument as doing nothing more than contending the drugs were Linville's, not his, and that she had a motive to lie. Besides, questions during cross-examination and closing argument came *after* the State admitted Rule 404(b) evidence regarding Cannon's knowledge and it must *first* be placed at issue. Therefore, whether Cannon placed knowledge at issue turns solely on the "several questions that probed prospective jurors about lack of knowledge" during voir dire. State's Br. of Appellee at 15.

[43] Cannon has not provided this court with the transcript of voir dire and therefore I will not speculate as to his exact questions to jurors. However, during the Rule 404(b) discussion outside the presence of the jury, the State made several unchallenged assertions regarding Cannon's questions during voir dire:

> Well, Judge, I believe [Cannon] did in fact open the door to this whole issue when we went through the jury selection process. He asked all the jurors are there other people in your house, did your kids hide something in your house that you don't know about, can your spouse hide something in your house, can they do things in your house that you don't know about. So all the time that this jury was being selected [defense counsel is] over here laying the groundwork to convince them that his client didn't do anything, that his client didn't know anything, that his client didn't have any intent to do anything.

Tr., Amended Vol. I at 140-41.  Similarly, the trial court explained in overruling Cannon's objection:

> If the evidence comes in [under the intent exception], then the knowledge is irrelevant.  Then we also have a very interesting issue that [the State] raises is that during the voir dire you in fact did question people about whether or not people could hide things in their house and them not know about it and so forth and basically the, [sic] and I recognize that was my impression of what you were attempting to do on voir dire was based on my trial practice and not necessarily what you intend to do, but you were laying the ground work to make a final argument that they didn't show they knew about it and thereby trying to take advantage of the situation through inoculation if you will during the voir dire process to foreclose the State from raising that issue and then trying to bring it up at the end and I don't think that is fair to the State.  So I think knowledge is an issue at this point.

*Id.* at 142-43.

[44] On this issue, I view the facts presented as analogous to *Sundling v. State*, 679 N.E.2d 988 (Ind. Ct. App. 1997).  There, Sundling was charged with child molestation and, during voir dire, "Sundling's attorney asked prospective jurors various general questions regarding whether they understood that the testimony of small children could be manipulated by parents, police and therapists."  *Id.* at 992.  The State then filed its notice to offer Rule 404(b) evidence and the trial court permitted the evidence for the purpose of determining whether "the witness' testimony may be fantasized."  *Id.*  Sundling was convicted and appealed, arguing the Rule 404(b) evidence was erroneously admitted.  We reversed Sundling's conviction and explained:

[A]n examination of the record reveals that Sundling did not place the contention that the victims were fantasizing about their molestations in issue. None of the questions posed to the jury used the word "fantasy" or suggested that either [of the victims] "fantasized" the alleged molestations. Sundling's voir dire of potential jurors merely pointed out that the testimony of young children could be manipulated by parents, police and therapists. Importantly, Sundling never presented any specific factual claim at trial that [the victims] "fantasized" their sexual encounters so as to allow the prosecution to rebut with evidence of prior misconduct. Whether the children fantasized their molestation was simply not put in issue; and consequently, it may not serve as an excuse for the admission of Sundling's extraneous bad acts or uncharged crimes.

*Id.* at 993.

[45] Similarly, had Cannon's questions during voir dire been combined with argument in his opening statement, closing argument, or questions during cross-examination, they may very well have been sufficient to place knowledge at issue. *See, e.g., McClendon v. State,* 910 N.E.2d 826, 832 n.2 (Ind. Ct. App. 2009) (noting "it is apparent from sidebar conversations that [the defendant] raised the issue of self-defense in voir dire and his opening statement"), *trans. denied.* But that is not the case before us. The questions were isolated and aimed at inquiring into the potential jurors' biases or tendency to believe or disbelieve something. *See Hopkins v. State,* 429 N.E.2d 631, 635 (Ind. 1981) (noting the proper use of questions during voir dire).

[46] In this respect, Cannon's questions are even less likely to raise an issue than the statements disguised as questions in *Sundling*. There, defense counsel asked

whether prospective jurors "understood that the testimony of small children could be manipulated by parents, police and therapists." *Sundling*, 679 N.E.2d at 992. As Judge Chezem aptly noted in her *Sundling* dissent, "Our supreme court has held that 'it is not the function of voir dire examination to 'inform' the jurors of anything.'" *Id*. at 994-95 (citing *Blackburn v. State*, 271 Ind. 139, 390 N.E.2d 653, 656 (1979)). Because Sundling did not raise the defense of manipulation in his case-in-chief and his statements to the jury "were not valid attempt[s] to understand the potential jurors' understanding[,]" Judge Chezem concluded the Rule 404(b) evidence was properly admitted so that the State could rebut the issue Sundling raised in voir dire. *Id*. at 995-96. I share no such dilemma here and I believe Cannon's questions during voir dire, standing alone, were insufficient to place his knowledge at issue.

## C. Forbidden Inference

[47] Cannon argues that the State admitted the evidence to suggest the forbidden inference, i.e., "for the purpose of showing bad guy [sic] sitting at defense counsel table is guilty of drug dealing and possession of drugs because he is a bad guy who has dealt drugs and been in possession of drugs in the past." Appellant's Br. at 10.

[48] We have previously explained that the reason the forbidden inference is forbidden is not because the inference is unreasonable, but because it *is* reasonable and thus susceptible to misuse. *Craun v. State,* 762 N.E.2d 230, 240 (Ind. Ct. App. 2002) (Kirsch, J., dissenting), *trans. denied.* Indeed, the State

would need to do little more than list a defendant's prior convictions and alleged bad acts to sway the minds of many jurors. That is why courts require a "prosecutor who wants to use prior bad acts evidence [to] come to court prepared with a specific reason, other than propensity, why the evidence will be probative of a disputed issue that is permissible under Rule 404(b). Mere recitation that a permissible Rule 404(b) purpose is 'at issue' does not suffice." *Miller,* 673 F.3d at 700.

[49] As I concluded above, neither knowledge nor intent were affirmatively placed at issue. By introducing much of Linville's testimony, the State distracted from the events of November 18, 2015, and, by its own admission, attempted to "show the defendant was engaged in the continuous pattern of drug dealing for years and negate the defendant's defense that the defendant did not commit the crimes." Tr., Amended Vol. I at 144. This is the very inference that Rule 404(b) prohibits. *See U.S. v. Beasley,* 809 F.2d 1273, 1278 (7th Cir. 1987) ("The inference from 'pattern' by itself is *exactly* the forbidden inference that one who violated the drug laws on one occasion must have violated them on the occasion charged in the indictment. Unless something more than a pattern and temporal proximity is required, the fundamental rule is gone. This is why 'pattern' is not listed in Rule 404(b) as an exception."). Put simply, the evidence was not relevant to a matter at issue other than the defendant's propensity to commit the charged acts and, therefore, it was inadmissible.

# II. Error

Having concluded the admission of the evidence was an abuse of the trial court's discretion, I turn to its prejudicial impact. *Sundling*, 679 N.E.2d at 994. The majority concludes that its admission, even if in error, was harmless. However, if Rule 404(b) is to serve any purpose at all, I must disagree.

"Generally, errors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party." *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012). In determining the effect of the evidence on a defendant's substantial rights, we look to the probable impact on the fact finder. *Id.* Moreover, the "improper admission [of evidence] is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." *Id.*

The only conviction which Cannon appeals is that for possession of a narcotic drug. A conviction for possession of a narcotic drug may be supported by either actual or constructive possession. *Griffin v. State,* 945 N.E.2d 781, 783 (Ind. Ct. App. 2011). "Actual possession occurs when a defendant has direct physical control over an item, whereas constructive possession occurs when a person has the intent and capability to maintain dominion and control over the item." *Id.* On appeal, the State appears to argue there was "strong" evidence of both constructive and actual possession and that the evidence "provides a strong inference that Cannon actually possessed the heroin and hid it in the shelf when

the police arrived." State's Br. of Appellee at 17-18. This latter contention, however, contradicts the State's own closing argument and the uncontested evidence presented at trial. Sergeant Taylor, who had observed Cannon hide something on the shelf through the window, testified:

[Defense Counsel]: I'm going to show you what's been marked as State's Exhibit 2. Is that the shelving unit you're talking about, sir?

[Officer Taylor]: Yes.

[Defense Counsel]: I only see four shelves in that picture. One very recognizable above, one very recognizable below.

[Officer Taylor]: Uh huh.

[Defense Counsel]: Where was the heroin located?

[Officer Taylor]: It was in a red vase.

[Defense Counsel]: Is there a red vase in that picture, sir?

[Officer Taylor]: It might be on that bottom shelf. I know the, I don't, I don't I wasn't the one, I was just walking out of the room when Officer Root was pulling the—

[Defense Counsel]: But you don't recall where the heroin came from?

[Officer Taylor]: No, I know it came from that shelf because he had pulled the vase from that area and was pulling the grapes out when I had walked into the living room when he said that he had located some more narcotics.

[Defense Counsel]: Was this before or after the vase was removed?

[Officer Taylor]: I'm not sure. You would have to ask Officer Melton.

[Defense Counsel]: Ok. Is this the shelf where the marijuana was located?

[Officer Taylor]: Yes.

[Defense Counsel]: Ok. Would that be on the center shelf just behind that item laying on its side that you said appeared to be a firearm?

[Officer Taylor]: Yeah, there's one, two, three, and then there's shelving down here.

[Defense Counsel]: Ok. That was the shelf that he went to, is that correct?

[Officer Taylor]: Yes.

[Defense Counsel]: And that was where the marijuana was located?

[Officer Taylor]: Yes.

[Defense Counsel]: And he admitted that he had had marijuana and placed it on that shelf, did he not?

[Officer Taylor]: Yes.

Tr., Amended Vol. I. at 68-69.

[53]    The shelving unit in question contains five to six shelves. On what appears to be the second shelf from the top, officers located a small, bowl containing 16.23 grams of marijuana. Sergeant Taylor testified this was the shelf on which

Cannon appeared to hide something—not the shelf containing heroin two shelves below. Moreover, the bowl was open, which would have easily allowed Cannon to place the marijuana inside it before answering the door. The vase containing heroin, however, was full of "some plastic, like fake, grapes" which officers had to remove in order to reveal its contents. *Id.* at 61. These uncontested facts prevent a reasonable inference that Sergeant Taylor witnessed Cannon place heroin on the shelving unit. Therefore, the record does not support actual possession because there was no evidence that Cannon had direct physical control over the heroin. *Griffin,* 945 N.E.2d at 783.

[54] Indeed, the State conceded in its closing argument that Cannon hid marijuana on the shelf—not heroin—proceeding on a theory of constructive possession. The State argued:

> Where'd that bag of marijuana come from? . . . he picks that bag up off the counter and he takes it into the dining room and where does he put it? He puts it on the third same shelf where the heroin is. What's that tell you? That shelf is his hiding place.

Tr., Amended Vol. II at 14.[7] To fulfill the capability element of constructive possession, as the majority emphasizes, slip op. at ¶ 11, the State must demonstrate that the defendant was "able to reduce the controlled substance to his personal possession." *Grim v. State,* 797 N.E.2d 825, 832 (Ind. Ct. App.

---

[7] I must assume the State was referring to the same shelving unit, not the "same shelf," when arguing Cannon "put[] [the marijuana] on the third *same shelf* where the heroin is[,]" *id.* (emphasis added)*,* because, as discussed above, the heroin was located two shelves below where Sergeant Taylor witnessed Cannon appear to hide something.

2003). To prove the second element—intent—the State must demonstrate the defendant's knowledge of the presence of the contraband. *Id.* When the premises on which the contraband was found is in defendant's exclusive control, an inference is permitted that he or she knew of the presence of contraband and was capable of controlling it. *Griffin,* 945 N.E.2d at 784. In cases like this, where the premises were not in Cannon's exclusive control—because Linville owned the home and lived there as well—the inference is not permitted absent some additional circumstances indicating knowledge of the presence of the contraband and the ability to control it. *Id.* Among the recognized additional circumstances are:

> (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) the contraband is in plain view; and (6) the location of the contraband is in close proximity to items owned by the defendant.

*Id.* (citation omitted).

[55] In arguing these factors on appeal, the State mischaracterizes evidence presented at trial. The State alleges that the heroin was found "in a glass vase in Cannon's residence and review of the evidence indicates it was readily observed in that open container." State's Br. of Appellee at 17. To the contrary, several officers testified that the heroin was not readily observable because decorative plastic grapes concealed the vase's contents. Tr., Amended Vol. I at 61, 69, 218. The State also continues to argue the evidence supports

an inference that Cannon put heroin on the shelf as police arrived, which, for the reasons discussed above, is unsupported by the record.

[56] After disposing of such arguments, several factors remain which weigh in the State's favor, including: (1) Cannon admitted to the possession of marijuana, which he placed on the same shelving unit as the heroin, albeit two shelves above; (2) Linville's testimony that she gave Cannon $1,800 he intended to use to buy drugs; (3) Cannon was home alone; (4) Cannon was in close proximity to the heroin; and (5) a digital scale, cutting agent, and several guns were discovered in the house. If we were reviewing this case on a challenge to the sufficiency of the evidence, I would vote to affirm Cannon's conviction. Here, however, is the crucial issue on which I disagree with the majority: we have long held that the "question is not whether there is sufficient evidence to support the conviction absent the erroneously admitted evidence, but whether the evidence was likely to have had a prejudicial impact on the jury." *Camm v. State,* 812 N.E.2d 1127, 1137 (Ind. Ct. App. 2004), *trans. denied.* We adhere to the following definition of non-constitutional reversible error, adopted from the United State Supreme Court:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and judgment should stand . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so,

whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Miller v. State*, 575 N.E.2d 272, 275 (Ind. 1991) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946)).

[57] Applying this standard, our supreme court faced an analogous situation in *Bonner v. State*, 650 N.E.2d 1139 (Ind. 1995). There, police had received tips that Bonner was dealing drugs and began surveillance of his activities, ultimately culminating in his arrest and conviction for dealing in cocaine. *Id.* at 1040. During Bonner's trial, three police officers testified to the fact that they had been informed that Bonner was trafficking drugs. *Id.* On transfer, our supreme court concluded the officers' statements were inadmissible hearsay and admitting the statements constituted reversible error. The court explained:

> We must recognize that, despite other evidence of the defendant's guilt, the erroneously admitted testimony here was likely to have had a prejudicial impact on the jury. The jury, faced with the responsibility of determining whether the defendant was guilty of the offense of dealing in cocaine on February 3, 1989, was subjected to repeated evidence that police received information before this date indicating that the defendant was participating in "drug trafficking" involving cocaine. This assertion was emphasized through its repetition in the separate testimony of the three officers.
>
> * * *
>
> In view of the nature, scope, and repetition of evidence at issue, we cannot conclude that there was no substantial likelihood that this evidence contributed to the conviction, and thus we decline to find the error harmless.

*Id.* at 1141-42.

[58] Similarly here, the jury was exposed to numerous references to Cannon's alleged drug-dealing past and I believe the State invited the jury to decide guilt for the wrong reasons. Linville's testimony was replete with such references, including allegations that Cannon made his living from "selling drugs" and that she often took him places to conduct drug deals. Tr., Amended Vol. I at 148, 136. When the State sought to elicit the details of Linville's aiding, inducing, or causing charge, she replied, "I thought there was [sic] a few of them." *Id.* at 148. Moreover, the State utilized the Rule 404(b) evidence during its case-in-chief and closing argument. On more than one occasion, our supreme court has held that such evidence was not harmless. *See, e.g., Thompson,* 690 N.E.2d at 237 (holding evidence was not harmless where State emphasized the evidence its opening statement, its case-in-chief, and again in closing argument); *Wickizer,* 626 N.E.2d at 800-01 (holding improperly admitted evidence was not harmless where State emphasized evidence in opening and closing statements).

[59] Central to our analysis for harmless error, however, is the nature of the erroneously admitted evidence. Here, Linville's testimony painted a picture of Cannon as a longtime drug dealer, unworthy and undeserving of the jury's consideration. The evidence was highly prejudicial—few accusations do more to garner a jury's condemnation than that of "drug dealer" and that, of course, is why prosecutors attempt to admit such evidence whenever possible. Given the admission of highly prejudicial evidence, it was very likely that the jury used

the evidence precisely for the purpose for which it may not be considered: "Cannon is a bad guy and if he did it before he probably did it again."

[60] The majority makes much of the trial court's admonishment to the jury—stating that it is presumed to cure any error that might have occurred. Slip op. at ¶ 13. I disagree. Here, the trial court informed the jury that the evidence "has been received solely on the issue of defendant's intent or knowledge. This evidence should be considered by you only for the limited purpose for which it was received." Tr., Vol. II at 32–33. As discussed above, the evidence was not admissible for either purpose and the admonishment specifically authorized its consideration. Therefore, the limiting instruction was insufficient to nullify the harm and our supreme court has repeatedly found reversible error despite the presence of such admonishments. *See Thompson,* 690 N.E.2d at 237 n.12; *Wickizer,* 626 N.E.2d at 799 n.3. On the facts presented here, I also agree with the Seventh Circuit's conclusion in *U.S. v. Miller,* regarding an almost identical admonishment under similar circumstances. The court explained:

> Some have suggested that such instructions are incoherent even to bright laypeople. We leave the broader questions for another day. For this case, it is enough to note that when the government cannot explain how the prior conviction relates to the question of intent without resorting to a propensity inference, it would be unfair to expect the jury to do so based only on this instruction.

673 F.3d at 701-02. Here, the State engaged in the "forbidden inference" in arguing for admission of the evidence and even the trial court came dangerously close in its ruling:

> Then the next element we get into involve [sic] the crime of dealing controlled substances taking place. The evidence we have most favorable to the State is that Mr. Cannon is a drug dealer, has been a drug dealer for a long period of time, that Ms. Linville regularly took him out to drug deals. There's been no testimony that he's ever dealt drugs from the home . . . .

Tr., Amended Vol. I at 227-28. Thus, I believe it would be disingenuous to conclude that the jury—unfamiliar with the intricacies of the rules of evidence—did otherwise.

[61] Furthermore, the record reveals that Cannon engaged in a trial strategy aimed at preventing the State from admitting Rule 404(b) evidence. This strategy—though quite skillful under the circumstances—required Cannon to be careful not to place a Rule 404(b) exception "at issue," and effectively relegated the defense to highlighting reasonable doubt within the State's case-in-chief. Had Cannon known that Rule 404(b) evidence would be admitted, regardless of whether he opened the door for it to be admitted or not, he may have employed different strategies. *See Mack v. State,* 736 N.E.2d 801, 803 (Ind. Ct. App. 2000) ("The collateral criminal conduct of being known to deal drugs, whether substantiated by direct reference to a previous conviction or as an unsolicited basis of reference, is the type of harm that [the defendant] sought to avoid. To be tagged as a known drug dealer in this sparse evidentiary situation was not harmless."), *trans. denied.* Accordingly, although not necessary to this analysis, I also believe that Cannon's defense was prejudiced by the error.

In conclusion, I believe this case presents the very reason Rule 404(b) exists: the "forbidden inference" is all but obvious from the record.[8] Moreover, there was no "substantial independent evidence of guilt" required to prove that there was "no substantial likelihood the challenged evidence contributed to the conviction." *Hoglund*, 962 N.E.2d at 1238. This was, after all, only a case of constructive possession and our role is not to search the record for any scintilla of evidence to support a conviction, nor is it our role to "become . . . a second jury to determine whether the defendant is guilty." *Neder v. U.S.*, 571 U.S. 1, 19 (1999); *see Hamilton*, 49 N.E.3d at 556. Rather, our role is to determine "whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Miller,* 575 N.E.2d at 275.

"A fair trial is required for every defendant, regardless of his apparent guilt or the magnitude of the crimes he may have committed." *U.S. v. Ostrowsky*, 501 F.2d 318, 324 (7th Cir. 1974). Considering the highly prejudicial nature of the evidence, its pervasive presence at trial, and the error's effect on Cannon's trial strategy, I cannot conclude the error was harmless and I would reverse Cannon's conviction.

---

[8] *See Halliburton v. State,* 1 N.E.2d 670, 681 (Ind. 2013) (noting that Rule 404(b) "is designed to prevent the jury from making the 'forbidden inference' that prior wrongful conduct suggests present guilt.").