

FILED

Oct 30 2017, 10:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ronald J. Moore
The Moore Law Firm, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin Henson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 30, 2017<br><br>Court of Appeals Case No.<br>89A01-1705-CR-972<br><br>Appeal from the Wayne Superior Court<br><br>The Honorable Charles K. Todd, Jr., Judge<br><br>Trial Court Cause No.<br>89D01-1411-FC-93 |

**Najam, Judge.**

## Statement of the Case

[1] Kevin Henson appeals his convictions following a jury trial for three counts of battery, as Class C felonies; four counts of criminal recklessness, as Class D felonies; criminal mischief, as a Class D felony; and operating a vehicle while

intoxicated, as a Class C misdemeanor. Henson presents three issues for our review:

1.    Whether the trial court violated his right under Article 1, Section 14 of the Indiana Constitution to be free from double jeopardy.

2.    Whether the State presented sufficient evidence to support seven of his convictions.

3.    Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[2]    Shortly after midnight on March 9, 2014, Henson, his son Stephen Daniel Henson ("Daniel"), and Charles Patterson II drank alcohol together at an apartment in Richmond. Throughout the night, Henson and Daniel engaged in a heated argument. At approximately 1:00 a.m., the three left the apartment in order to buy cocaine from Daniel's cousin. Henson drove Daniel's Honda Accord with Patterson in the front passenger seat and Daniel in the back seat behind Henson. Henson and Daniel continued to argue as they were in the car.

[3]    As Henson turned southbound onto Chester Boulevard, he "pressed the [gas] pedal all the way down to the floor" and sped down the street. Tr. Vol. 2 at 139. Patterson asked Henson to stop the car. In fact, Patterson "pleaded for [his] life for him to stop the car to let [him] out[,]" but Henson ignored him. *Id.*

at 165.  At one point, Daniel told Henson that he hated him and called him a "b****."  *Id.* at 141.  In response, Henson said, "'I'm a b[****], well, watch this[,]' and he jerked the wheel . . . straight to the left . . . clear across all lanes, directly into [a] Speedway [gas station,] and he continued to gun it."  *Id.* Henson was driving the car at approximately sixty miles per hour when he drove over a curb and straight into some gas pumps.

[4]     As the car crashed into the gas pumps, which caused explosions, Daniel and Patterson were both ejected from the car and hit the ground.  The car flipped onto its roof and slid across the pavement until it came to rest.  Scotty Adams, a Speedway customer who had witnessed the crash, found Henson unconscious and "trapped" in the car in an "upside down" position.  *Id.* at 96.  Adams could not get Henson out of the car, and Adams sought help from a responding police officer.  Ultimately, Richmond Police Department Officer Alecia Tonuc climbed into the car and extricated Henson.[1]  Medical personnel arrived and assisted Daniel, Patterson, and Henson before transporting them to the hospital. Henson's blood alcohol content ("BAC") was .22.

[5]     As a result of the crash, Patterson sustained severe injuries to his head and face that required reconstructive facial surgery, which included having metal plates installed in the right side of his face.  Daniel sustained injuries to his head, shoulder, and knees and required three to four weeks to recover from his

---

[1] Henson's legs were stuck "underneath the dash . . . underneath the steering wheel."  Tr. Vol. 3 at 51. Officer Tonuc found a bottle of Smirnoff vodka between Henson's legs.

injuries.  Jasmine Simmons, another customer at the gas station who witnessed the crash and ensuing explosions, sustained burns to her left thigh when she removed her three-year-old son from her car, which she had parked at a nearby pump.

The State charged Henson with fourteen felonies and two misdemeanors.  A jury found Henson guilty of twelve felonies.[2]  The trial court entered judgment of conviction on the following counts:  three counts of battery, as Class C felonies (Counts I, II, and III); four counts of criminal recklessness, as Class D felonies (Counts V, VII, VIII, and IX); criminal mischief, as a Class D felony (Count X); and operating a vehicle while intoxicated, as a Class C misdemeanor (Count XI).  And the trial court sentenced Henson to an aggregate term of nine years and sixty days, with one and one-half years suspended to probation.  This appeal ensued.

# Discussion and Decision

## Issue One:  Double Jeopardy

Henson first contends that the trial court violated his right under Article 1, Section 14 of the Indiana Constitution to be free from double jeopardy when the court entered its judgment of conviction against him on the two counts of battery against Patterson and on the battery and criminal recklessness counts

---

[2]  The State dismissed two of the felony counts and the two misdemeanor counts prior to trial.

involving Daniel as the victim. We review alleged double jeopardy violations *de novo*. *Berg v. State*, 45 N.E.3d 506, 509 (Ind. Ct. App. 2015).

[8]     Article 1, Section 14 of the Indiana Constitution prohibits double jeopardy, providing that "[n]o person shall be put in jeopardy twice for the same offense." As the Indiana Supreme Court has explained:

> In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999)[,] this Court concluded that two or more offenses are the same offense in violation of article 1, section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Under the actual evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To find a double jeopardy violation under this test, we must conclude that there is "*a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.*" *Id.* The actual evidence test is applied to all the elements of both offenses. "In other words . . . the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

> Our precedents "instruct that a 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008) (citing cases). The reasonable possibility standard "fairly implements the protections of the Indiana Double Jeopardy Clause and also permits convictions for

multiple offenses committed in a protracted criminal episode when the case is prosecuted in a manner that insures that multiple guilty verdicts are not based on the same evidentiary facts." *Richardson*, 717 N.E.2d at 53 n. 46. The existence of a "'reasonable possibility' turns on a practical assessment of whether the [fact finder] may have latched on to exactly the same facts for both convictions." *Lee*, 892 N.E.2d at 1236. We evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel. *Id.* at 1234.

*Garrett v. State*, 992 N.E.2d 710, 719-20 (Ind. 2013) (emphasis added; last alteration original). Thus, under *Spivey*, in order for there to be a double jeopardy violation under the actual-evidence test the evidentiary footprint for all the elements required to prove one offense must be the same evidentiary footprint as that required to prove all the elements of another offense. *See* 761 N.E.2d at 833.

[9] Here, according to the State's charging information, which tracked the relevant statutes at issue, Henson committed two counts of battery, as Class C felonies, when he

> [Count I] knowingly or intentionally touch[ed] Charles Patterson in a rude, insolent, or angry manner, to-wit: Kevin L. Henson drove a motor vehicle at a high rate of speed into gas pumps on the Speedway lot while Charles Patterson was an occupant of said motor vehicle, with said touching resulting in serious bodily injury to Charles Patterson, to-wit: unconsciousness, head laceration, facial fractures and/or extreme pain, [and] . . .
>
> [Count II] knowingly or intentionally touch[ed] Charles Patterson in a rude, insolent, or angry manner, to-wit: Kevin L.

> Henson drove a motor vehicle at a high rate of speed into gas
> pumps on the Speedway lot while Charles Patterson was an
> occupant of said motor vehicle, with said touching being
> committed by means of a deadly weapon, to-wit: a moving
> motor vehicle[.]

Appellant's App. Vol. 2 at 17; *see* Ind. Code § 35-42-2-1(a)(3) (2013).

[10] Henson contends, and the State agrees, that his convictions under both of those two counts violate the prohibition against double jeopardy. In particular, as the State points out,

> [Henson] was convicted of two Class C felony batteries against
> [Patterson] for his one act of driving the vehicle at a high rate of
> speed into gas pumps. The factual allegations in the charging
> information for each of [Henson]'s offenses were based on this
> single act. The evidence presented at trial showed that [Henson]
> used the vehicle as a deadly weapon by driving it into the gas
> pumps one time, resulting in serious bodily injury to [Patterson]
> when he was ejected from the vehicle. The State did not argue
> any additional acts that may have supported either of the battery
> convictions at trial, and the jury was not instructed on any
> additional acts.
>
> Given the charging information, the jury instructions, the
> evidence, and the State's opening and closing arguments, there is
> a reasonable possibility that the evidentiary facts used by the jury
> to establish the essential elements of one Class C felony battery
> may also have been used to establish the essential elements of the
> second Class C felony battery.

Appellee's Br. at 28 (citations omitted).

[11]     We agree that the State's evidence establishing all of the essential elements of each count of battery against Patterson was the same. *See Spivey*, 761 N.E.2d at 833. In other words, the evidentiary footprint underlying both Counts I and II was identical. Accordingly, there is a reasonable possibility that the jury "latched on to exactly the same facts for both convictions." *Lee*, 892 N.E.2d at 1236. We reverse Henson's conviction for battery, as a Class C felony, under Count II and remand with instructions for the trial court to vacate that conviction.

[12]     Likewise, Henson contends, and the State agrees, that his convictions on Count III, for battery, as a Class C felony, and Count V, for criminal recklessness, as a Class D felony, both of which allege injuries to Daniel, violate the prohibition against double jeopardy. To prove battery, as a Class C felony, as alleged in Count III, the State was required to show that Henson knowingly or intentionally touched Daniel in a rude, insolent, or angry manner by means of a deadly weapon, namely, a moving motor vehicle. *See* I.C. § 35-42-2-1(a)(3). And to prove criminal recklessness, as a Class D felony, as alleged in Count V, the State was required to show that Henson recklessly, knowingly, or intentionally performed an act that created a substantial risk of bodily injury to Daniel and that he performed that act while armed with a deadly weapon, namely, a moving motor vehicle. *See* I.C. § 35-42-2-2(c)(2)(A).

[13]     The State acknowledges that, at trial, it presented the same evidence, namely, Henson's single act of driving the car into the gas pumps, to prove the essential elements of both Counts III and V. Indeed, the State concedes that it "did not

argue any additional acts that may have supported either of the convictions at trial, and the jury was not instructed on any additional acts." Appellee's Br. at 29. We again agree. Accordingly, there is a reasonable possibility that the jury "latched on to exactly the same facts for both convictions." *Lee*, 892 N.E.2d at 1236. We reverse Henson's conviction for criminal recklessness, as a Class D felony, under Count V and remand with instructions for the trial court to vacate that conviction.

## Issue Two: Sufficiency of the Evidence

[14] Henson contends that the State presented insufficient evidence to prove seven of his convictions. Because we reverse two of the challenged convictions, we need only address his argument with respect to his convictions for two counts of battery, as Class C felonies (for injuries sustained by Daniel and Patterson) and three counts of criminal recklessness, as Class D felonies (for risk of injuries to bystanders at the gas station). In reviewing the sufficiency of the evidence, we consider only the evidence and reasonable inferences most favorable to the conviction, neither reweighing the evidence nor reassessing witness credibility. *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). We will affirm the judgment unless no reasonable fact-finder could find the defendant guilty. *Id.*

[15] To prove Count I, battery, as a Class C felony, the State was required to show that Henson knowingly or intentionally touched Patterson in a rude, insolent, or angry manner, which resulted in serious bodily injury to Patterson. *See* I.C. § 35-42-2-1(a)(3). To prove Count III, battery, as a Class C felony, the State was required to show that Henson knowingly or intentionally touched Daniel in a

rude, insolent, or angry manner and by means of a deadly weapon, namely, a moving motor vehicle. *See id.* To prove the criminal recklessness counts, the State was required to show that Henson recklessly, knowingly, or intentionally performed an act that created a substantial risk of bodily injury to Simmons, Simmons' son, and Brandon Hine.[3] *See* I.C. § 35-42-2-2(c)(2)(A). A defendant's mental state is ordinarily a matter of circumstantial proof and may be "inferred from the defendant's conduct and the natural and usual sequence to which such conduct reasonably points." *Boling v. State*, 982 N.E.2d 1055, 1057 (Ind. Ct. App. 2013).

[16] Henson asserts that there is no evidence that he touched either Daniel or Patterson. And he maintains that the State did not prove the *mens rea* elements of each offense. In particular, he contends that there is no evidence that he had the specific intent to use the car as a deadly weapon. We address each contention in turn.

*Touching*

[17] As our Supreme Court has stated, "[w]hile battery requires [a] defendant to have intended to touch another person, [he] need not personally touch another person since battery may be committed by the unlawful touching by [the] defendant *or by any other substance put in motion by [the] defendant*." *Matthews v. State*, 476 N.E.2d 847, 850 (Ind. 1985) (holding intent to touch satisfied where

---

[3] Brandon Hine was another Speedway customer at the time of the offenses.

defendant fired bullets at officer) (emphasis added). Here, the State presented ample evidence from which the jury could infer that Henson intentionally drove his car at a high rate of speed directly into gas pumps. That collision caused Daniel and Patterson to be ejected from the car and thrown onto the pavement, which resulted in their injuries. To the extent Henson contends that the evidence is insufficient to show that he was driving the car at the time, that is a request that we reweigh the evidence, which we cannot do. The State presented evidence supporting a reasonable inference that Henson intentionally drove the car into the gas pumps, and we hold that that evidence is sufficient to prove that he knowingly or intentionally touched Daniel and Patterson in an angry manner.

*Car as Deadly Weapon*

[18] Henson "acknowledges that motor vehicles can be construed as deadly weapons when the circumstances illustrate they are intended to be used as such." Appellant's Br. at 25. But Henson maintains that our Supreme Court "requires a *specific intent* to use the vehicle as a deadly weapon." *Id.* at 26 (citing *Defries v. State*, 342 N.E.2d 622, 626 (Ind. 1976)) (emphasis added). And Henson asserts that there is no evidence that he had the specific intent to use the car as a deadly weapon, "nor could it be inferred as the jury was not instructed as such." *Id.* We cannot agree.

[19] As the State points out, the trial court instructed the jury in relevant part as follows:

The term deadly weapon is defined by law as meaning a weapon, device, taser, as defined by Indiana Code 35-47-8-3, or electronic stun weapon, as defined by . . . Indiana Code 35-47-8-1, equipment, chemical substance, or other material that in the manner it is used, or could ordinarily be used, is readily capable of causing serious bodily injury. *A motor vehicle may be a deadly weapon if used or intended to be used in a manner readily capable of causing serious bodily harm.*

Tr. Vol. 3 at 136 (emphasis added).

[20] And the evidence supports a reasonable inference that Henson intended to use the car as a deadly weapon. In particular, in response to Daniel calling him a "b****," Henson said, "'I'm a b[****], well, watch this[,]' and he jerked the wheel . . . straight to the left . . . clear across all lanes, directly into [a] Speedway [gas station,] and he continued to gun it." Tr. Vol. 2 at 141. Henson was driving the car at approximately sixty miles per hour when he drove over a curb and straight into the gas pumps. The jury could have reasonably inferred from that conduct that Henson intended to cause serious bodily harm to Daniel, Patterson, and Speedway customers when he crashed the car. The evidence is sufficient to support Henson's conviction on Count III, battery against Daniel with a deadly weapon, as well as his convictions for criminal recklessness.

[21] Still, Henson contends that the trial court committed fundamental error when it did not *sua sponte* instruct the jury "that the *mens rea* element applies to the use of the vehicle as a deadly weapon." Appellant's Br. at 27. However, in support of that contention, Henson asserts, again, that "the jury must be informed that [it] must find 'that the vehicle can be a deadly weapon *if used or intended* to be

used in [such] a manner.'" *Id.* (quoting *DeWhitt v. State*, 829 N.E.2d 1055, 1064 (Ind. Ct. App. 2005) (emphasis added)). But, as the State points out, the trial court did so instruct the jury. Henson has not demonstrated error, let alone fundamental error.

### Issue Three:  Sentence

Finally, Henson contends that his sentence is inappropriate in light of the nature of the offenses and his character. As we have explained:

> Indiana Appellate Rule 7(B) permits an Indiana appellate court to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We assess the trial court's recognition or nonrecognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). The principal role of appellate review is to "leaven the outliers." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). A defendant must persuade the appellate court that his or her sentence has met the inappropriateness standard of review. *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007).

*Robinson v. State*, 61 N.E.3d 1226, 1228 (Ind. Ct. App. 2016).

Here, the trial court identified the following aggravating factors when it imposed its sentence:  Henson's criminal history, which included three prior felonies, eight misdemeanors, and prior probation violations; one of the victims was three years old; Henson had a pending criminal case at the time he committed these offenses; and the offenses "were egr[e]gious with multiple

victims and numerous parties being subject to potential danger other than the victims of the offenses, including employee(s) of Speedway, law enforcement, firefighters, and others based on [Henson]'s intentional acts." Appellant's App. Vol. 4 at 129-30. The trial court identified the following mitigating circumstances: several letters of support indicating "a caring and helping side" to Henson; Henson's willingness to pay restitution to his victims; and his steady employment. The court found that the aggravators "significantly" outweighed the mitigators.

[24] At the time of these offenses, the sentencing range for a Class C felony was two to eight years, with an advisory sentence of four years. I.C. § 35-50-2-6. And the sentencing range for a Class D felony was six months to three years, with an advisory sentence of one and one-half years. I.C. § 35-50-2-7. The trial court imposed concurrent six and one-half year sentences for the Class C felonies, concurrent two and one-half year sentences for the Class D felonies, and an additional sixty days for the Class C misdemeanor, with the sentences for each level of offense to run consecutively. Thus, the court imposed an aggregate term of nine years and sixty days, with one and one-half years suspended to probation.

[25] Henson asserts that his sentence is inappropriate in light of the nature of the offenses because, while the victims' injuries were significant and "cannot be minimized," this was "a single act that occurred within moments." Appellant's Br. at 35-36. But Henson does not explain why the short duration of the act underlying his offenses warrants a revised sentence. Indeed, it was *because*

Henson was driving so fast that the impact and potential impact on bystanders was so great. Further, Henson's BAC was .22 and he intentionally drove into the gas pumps in the course of an argument with his son. We cannot say that Henson's sentence is inappropriate in light of the nature of the offenses, which caused substantial injuries to multiple victims.

[26] Henson maintains that his sentence is inappropriate in light of his character. Henson points out that he: "was a low risk to reoffend"; was a "valuable employee" and a "caring individual"; and offered to make restitution. Appellant's Br. at 37. But Henson's long criminal history, which began in 1986 and includes three felonies, eight misdemeanors and multiple probation violations, reflects his poor character. Indeed, Henson had a warrant out for his arrest on a pending criminal case at the time he committed these offenses. Finally, Henson has a history of alcohol abuse, and he was on his way to buy cocaine at the time of these offenses, yet he has never sought substance abuse treatment. We cannot say that Henson's sentence is inappropriate in light of his character.

[27] Affirmed in part, reversed in part, and remanded with instructions.

Kirsch, J., and Brown, J., concur.