FILED

Jul 22 2020, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

James A. Hanson
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jennifer Turkette,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 22, 2020<br><br>Court of Appeals Case No.<br>20A-CR-87<br><br>Appeal from the Allen Superior<br>Court<br><br>The Honorable Wendy W. Davis,<br>Judge<br><br>Trial Court Cause Nos.<br>02D05-1802-F4-11<br>02D05-1808-F6-917 |

**Crone, Judge.**

## Case Summary

[1]     Jennifer Turkette appeals her ten-year aggregate sentence following her guilty

plea to level 4 felony dealing in a narcotic drug, level 5 felony dealing in a

narcotic drug, level 6 felony possession of a narcotic drug, and level 6 felony

unlawful possession of a syringe. She contends that her sentence is inappropriate based on the nature of the offenses and her character. Concluding that Turkette has failed to carry her burden to show that her sentence is inappropriate, we affirm.

## Facts and Procedural History[1]

On April 20, 2017, a Fort Wayne Police Department detective learned from a confidential informant (CI) that the detective could purchase heroin from Turkette. Appellant's App. Vol. 2 at 9-10. The detective and the CI went to Turkette's trailer, where Turkette seated them in her family room, which held numerous children's toys. Turkette told the detective that she was currently on home detention and had two children who were sleeping. The presentence investigation report (PSI) reveals that Turkette was on home detention for driving with a suspended license with a prior conviction. *Id*. at 84-85. Turkette also told the detective that her supplier provided her with pure uncut heroin and that three of her buyers had overdosed since the beginning of the year. She informed the detective that someone would be coming to the trailer with the heroin. When that person arrived, Turkette asked the detective for the money. After the detective gave her $200, she went to the front door and stood just outside it. A man ran up to the door with a plastic bag and gave it to Turkette,

---

[1] We remind Turkette's counsel that pursuant to Indiana Appellate Rule 46(A), the appellant's brief is required to set forth the statement of the facts before the standard of review.

and she handed him the money. Turkette came back inside and immediately handed the detective the plastic bag, which contained .8 grams of heroin.

[3] On May 2, 2017, the CI informed the detective that he could purchase heroin from Turkette, and they went to her trailer. Turkette again seated them in the family room, where two children both under the age of ten were playing. Turkette had previously told the CI that the heroin was "killer" and that three people had already overdosed on it that week. *Id.* at 7. A different man than the one before arrived at the trailer, and Turkette asked the detective and the CI who had the money. The detective then paid Turkette $200 for the heroin. The man and Turkette went to the back of the trailer to divide the heroin, leaving the children alone with the detective and the CI. Turkette came back to the family room where the children were still playing and gave the detective .9 grams of heroin wrapped in yellow paper.

[4] Based on these incidents, on February 12, 2018, in cause number 02D05-1802-F4-11 (Cause 11), the State charged Turkette with level 4 felony dealing in a narcotic drug in an amount less than one gram in the presence of a child less than eighteen years old and level 5 felony dealing in a narcotic drug in an amount less than one gram. On June 4, 2018, Turkette agreed to plead guilty to both charges and waived her right to be sentenced within thirty days, and the trial court signed an order placing her into the Drug Court Diversion Program. *Id.* at 24-30. Turkette also signed a drug court participation agreement.

[5] Less than three weeks later, on June 24, 2018, Turkette's then-eleven-year-old child called 911 to report an overdose victim. Tr. Vol. 1 at 19. Medics and police were dispatched to a house, where they found Turkette overdosed and unconscious with the hypodermic needle still in her arm. Appellant's App. Vol. 2 at 177-78. Turkette was in the basement of the house with both of her children. Police discovered that Turkette was in possession of .2 grams of fentanyl after the older child opened Turkette's purse to show them where "mommy's dope is." Tr. Vol. 1 at 19.

[6] Based on this incident, on August 3, 2018, in cause number 02D05-1808-F6-917 (Cause 917), the State charged Turkette with level 6 felony possession of a narcotic drug and level 6 felony unlawful possession of a syringe. On August 13, 2018, Turkette agreed to plead guilty to both charges and waived her right to be sentenced within thirty days, and the trial court signed an order placing her into the Drug Court Diversion Program. Appellant's App. Vol. 2 at 187-93. Turkette also signed a drug court participation agreement.

[7] On August 22, 2018, in the United States District Court for the Northern District of Indiana, Turkette was charged with knowingly selling a firearm to a convicted felon.[2] *Id*. at 226. Turkette was convicted of that offense, and on

---

[2] In several footnotes in her brief, Turkette requests that we take judicial notice of the proceedings in the federal case. Because she cites no authority for the proposition that state courts may take judicial notice of federal proceedings, we deny her request. The information regarding the federal case recited herein is provided by the PSI and the transcript.

August 21, 2019, she was sentenced to fifteen months in the bureau of prisons and to two years of supervised release. *Id.*

[8] On June 18, 2019, Turkette moved to withdraw her guilty pleas in both state causes, which the trial court granted, and her cases were returned to the active trial docket. *Id.* at 59, 214. On October 18, 2019, Turkette pled guilty in both causes without a plea agreement. *Id.* at 74, 219.

[9] On November 15, 2019, a sentencing hearing was held. The trial court acknowledged Turkette's remorse and found it to be a mitigating factor. The trial court found that her criminal history, consisting of seven misdemeanors and her federal felony conviction for selling a firearm to a convicted felon, was an aggravating factor. The trial court further found as aggravating factors that she had one suspended sentence that was revoked, was serving a suspended sentence and wearing an ankle bracelet for home detention when she committed the level 4 felony,[3] and was on bond when she committed the level 6 felonies; the court explained that such conduct showed a "complete disdain" for the court system. Tr. Vol. 1 at 25. The trial court also noted that the PSI indicated that Turkette was a high risk to reoffend, which the court would use as a tool in determining whether it should execute Turkette's sentence or place her on supervised release. The trial court also found that Turkette bragged about people overdosing from the heroin she sold them and that her child

---

[3] The trial court misspoke here; Turkette had committed the level 5 felony dealing offense when she was on home detention.

showed the police where her drugs were. The trial court found that the advisory sentence was not appropriate and that the facts and circumstances of the offenses and prior failed attempts at rehabilitation warranted a sentence above the advisory.

[10] In Cause 11, the trial court sentenced Turkette to concurrent executed terms of eight years for the level 4 felony and four years for the level 5 felony. In Cause 917, the trial court sentenced Turkette to concurrent terms of two years with one year suspended for each conviction. The trial court further ordered that the sentence in Cause 917 be served consecutive to the sentence in Cause 11, for an aggregate sentence of ten years with one year suspended. This appeal ensued.

## Discussion and Decision

[11] Turkette asks us to revise her sentence pursuant to Indiana Appellate Rule 7(B), which states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Turkette has the burden to show that her sentence is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218. Although Rule 7(B) requires us to consider both the nature of the offense and the character of the offender, the appellant is not required to prove that each of those prongs independently renders her sentence inappropriate. *Connor v. State*, 58 N.E.3d 215, 218 (Ind. Ct. App. 2016); *see also Moon v. State*, 110 N.E.3d 1156, 1163-64 (Ind. Ct. App. 2018) (disagreeing with majority's statement that Rule 7(B) "plainly requires the appellant to demonstrate that his

sentence is inappropriate in light of *both* the nature of the offenses and his character.") (quotation marks omitted) (Crone, J., concurring in part and concurring in result in part). Rather, the two prongs are separate inquiries that we ultimately balance to determine whether a sentence is inappropriate. *Connor*, 58 N.E.3d at 218.

[12] When reviewing a sentence, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We review sentences in their entirety to avoid overlooking the forest by focusing on the trees. *Id.* "We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). As we assess the nature of the offenses and character of the offender, "we may look to any factors appearing in the record." *Boling v. State*, 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013). Ultimately, whether a sentence should be deemed inappropriate "turns on our sense of the culpability of the defendant, the

severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.[4]

[13]  Turning first to the nature of the offenses, we observe that "the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011). In Cause 11, Turkette was convicted of possession of a narcotic as a level 4 felony because she committed the offense in the presence of children. Ind. Code § 35-48-4-1. The advisory sentence for a level 4 felony is six years, with a range of two to twelve years. Ind. Code § 35-50-2-5.5. Turkette was given two years above the advisory with no time suspended. She was also convicted of level 5 felony possession of a narcotic. The advisory sentence for a level 5 felony is

---

[4]  Although Turkette seeks our review pursuant to Appellate Rule 7(B), she asserts that the trial court's failure to properly recognize and weigh aggravating and mitigating factors resulted in an inappropriate sentence. We note that appellate review under Rule 7(B) is not a review of the trial court's consideration of aggravators and mitigators, but rather, as the rule states, an examination of the appellant's sentence based on the nature of the offense and the character of the offender, which we may undertake even if there is no irregularity in the trial court's sentencing decision. *See Childress v. State*, 848 N.E.2d 1073, 1079-80 (Ind. 2006) (discussing application of Rule 7(B)); s*ee also Buchanan v. State*, 767 N.E.2d 967, 972 (Ind. 2002) ("Although a trial court may have acted within its lawful discretion in determining a sentence, Article 7, § 4 of the Indiana Constitution authorizes independent appellate review and revision of a sentence imposed by the trial court."). We further note that prior to 2005, when the legislature amended our sentencing statutes, the trial court's weighing of aggravating and mitigating factors was reviewed under an abuse of discretion standard. *See Anglemyer*, 868 N.E.2d at 487-91 (discussing amendment of sentencing statutes). Since the 2005 amendments, as our supreme has explained, "[b]ecause the trial court no longer has any obligation to 'weigh' aggravating and mitigating factors against each other when imposing a sentence, ... a trial court can not now be said to have abused its discretion in failing to 'properly weigh' such factors." *Id*. at 491. Although there remain other ways that a trial court can abuse its discretion in sentencing, *id*. at 490-91, Turkette does not articulate a cogent argument in that regard. Accordingly, she has waived any claims that the trial court abused its discretion in sentencing her. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring that contentions in appellant's brief be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal); *Casady v. State*, 934 N.E.2d 1181, 1190 (Ind. Ct. App. 2010) (concluding that defendant waived claim that trial court improperly admitted evidence by failing to cite rules of evidence and case law), *trans. denied* (2011).

three years, with a range of one to six years. Ind. Code § 35-50-2-6. She was sentenced to four years executed.

[14] In Cause 917, she was convicted of two level 6 felonies. The advisory sentence for a level 6 felony is one year, with a range of six months to two and a half years. Ind. Code § 35-50-2-7. She was sentenced to two years, with one year suspended. We note that the sentence in Cause 917 is required to be consecutive to the sentence in Cause 11 because Turkette committed the offenses in Cause 917 when she was on bond in Cause 11. Appellant's App. Vol. 2 at 89; Ind. Code § 35-50-1-2. Overall, an aggregate sentence based on the advisory would have been seven years, and she was sentenced to ten years, three years over the advisory sentence.

[15] Turning now to the specific facts and circumstances of Turkette's offenses, we observe that her children were with her or nearby during their commission. Although this is accounted for in one count of dealing by its elevation to a level 4 felony offense, the children were in the trailer during the other dealing offense, and they were with her when she overdosed and went unconscious with the syringe still stuck in her arm. In fact, it appears that one of the children called 911. This would have been a very traumatic experience for the child. Also very troubling is that Turkette's child knew where Turkette's fentanyl was and had ready access to it. Thus, Turkette's actions have exposed her children to potentially dangerous individuals who were buying and selling drugs and to very dangerous, life-threatening substances.

As for Turkette's character, she has shown a lack of concern for the safety and security of her children.[5] Her boasting that her heroin was "killer" and about the number of people who have overdosed from her drugs shows a lack of regard for the lives of others. Appellant's App. Vol. 2 at 7. Her criminal

---

[5] Turkette cites *Reis v. State*, 88 N.E.3d 1099 (Ind. Ct. App. 2017), for the proposition that "[t]he analysis of the 'character of the offender' begins with an assessment of 'the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence was inappropriate.'" Appellant's Br. at 23 (quoting *Reis*, 88 N.E.3d at 1105). We note that the statement in *Reis* can be traced back to *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006), which was handed down while *Anglemyer* was up on transfer. The *Gibson* court acknowledged the uncertainty surrounding appellate review of a trial court's sentencing decision in light of the 2005 sentencing amendments and anticipated that our supreme court would soon provide guidance when it handed down *Anglemyer:*

> Until [our supreme] court issues an opinion in *Anglemyer*, we will assume that it is necessary to assess the accuracy of a *trial* court's sentencing statement if, as here, the trial court issued one, according to the standards developed under the 'presumptive' sentencing system …. We will assess the trial court's recognition or nonrecognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed here was inappropriate.

*Id*. at 146-47 (citations omitted).

*Anglemyer* clarified appellate review of sentencing decisions in light of the 2005 sentencing amendments by setting forth the manner in which a trial court may be said to abuse its discretion in sentencing and then conducting a separate analysis under Rule 7(B) that did not involve an assessment of the trial court's recognition or non-recognition of aggravators and mitigators. 868 N.E.2d at 487-93. Based on *Anglemyer*, we do not believe that a Rule 7(B) analysis should begin with an assessment of the trial court's recognition or non-recognition of aggravators and mitigators. Therefore, we do not believe that the statement in *Reis*, and the other cases listed below*,* accurately represents appellate review under Rule 7(B). *See Custance v. State*, 128 N.E.3d 8, 10 (Ind. Ct. App. 2019) ("We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate."); *Henson v. State*, 86 N.E.3d 432, 441 (Ind. Ct. App. 2017) (same); *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017) (same), *trans. denied*; *Green v. State*, 65 N.E.3d 620, 637 (Ind. Ct. App. 2016) (same), *trans. denied* (2017); *Robinson v. State*, 61 N.E.3d 1226, 1228 (Ind. Ct. App. 2016) (same); *Stephenson v. State*, 53 N.E.3d 557, 561 (Ind. Ct. App. 2016) (same); *Grundy v. State*, 38 N.E.3d 675, 683 (Ind. Ct. App. 2015) (same), *trans. denied*; *Ellis v. State*, 29 N.E.3d 792, 800 (Ind. Ct. App. 2015) (same), *trans. denied*; *Sandleben v. State*, 22 N.E.3d 782, 797 (Ind. Ct. App. 2014) (same), *trans. denied* (2015); *Caraway v. State*, 977 N.E.2d 469, 472 (Ind. Ct. App. 2012) (same), *trans. denied* (2013); *Rhoton v. State,* 938 N.E.2d 1240, 1248 (Ind. Ct. App. 2010) (same), *trans. denied* (2011); *Ruiz v. State*, 926 N.E.2d 532, 537 (Ind. Ct. App. 2010) (same), *trans. denied*; *Stokes v. State*, 908 N.E.2d 295, 304 (Ind. Ct. App. 2009) (same), *trans. denied*; *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008) (same); *Taylor v. State*, 879 N.E.2d 1198, 1206 (Ind. Ct. App. 2008) (same); *Lemond v. State*, 878 N.E.2d 384, 394 (Ind. Ct. App. 2007) (same), *trans. denied* (2008); *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (same); *Phillips v. State*, 875 N.E.2d 480, 483 (Ind. Ct. App. 2007) (same), *trans. denied* (2008); *Long v. State*, 865 N.E.2d 1031, 1035 (Ind. Ct. App. 2007) (same), *trans. denied*.

history, though many of her convictions are minor, shows a chronic disrespect for the law and a continuing unwillingness or inability to abide by it. In the year 2000, she was convicted of class B misdemeanor possession of marijuana, class A misdemeanor driving while suspended, and class C misdemeanor leaving the scene of an accident. In 2004, she was convicted of class B misdemeanor reckless driving. In 2016, she was convicted of class A misdemeanor driving while suspended, and her suspended sentence was revoked. She was on home detention for that offense when she committed the level 5 felony dealing offense in April 2017. In 2017, she was convicted of class A misdemeanor driving while suspended and was serving her suspended sentence for this crime when she committed the level 4 felony dealing offense. In 2018, she received her fourth conviction for class A misdemeanor driving while suspended and was arrested for knowingly selling a firearm to a convicted felon, a federal felony. She was ultimately convicted of that federal offense, which involved her purchasing a gun for her boyfriend, a convicted felon and a large-scale drug dealer. When the police obtained a warrant to search his home, they found methamphetamine, heroin, fentanyl, cocaine, crack cocaine, marijuana, edibles, twenty-six guns, and two bombs. We recognize that her actions are related to her drug addiction, but she was given a chance in drug court and did not or could not take advantage of it. We conclude that based on the nature of the offenses and Turkette's character, Turkette has failed to carry

her burden to show that her ten-year aggregate sentence for four felony drug crimes is inappropriate.[6] Therefore, we affirm her sentence.

[17] Affirmed.

Altice, J., concurs.

Bailey, J., concurs with separate opinion.

---

[6] Turkette asserts that during the sentencing hearing, the police detective and prosecutor demonstrated animus towards her and the trial court made disparaging comments about her. These assertions do little to advance her argument that her sentence is inappropriate.

Jennifer Turkette,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

Court of Appeals Case No.
20A-CR-87

**Bailey, Judge, concurring.**

[18] I fully concur with the majority view that Turkette failed to show that her ten-year aggregate sentence, with one year suspended, is inappropriate. However, I write separately to address the focus of footnote five–whether the trial court's findings of aggravators and mitigators provide this court with initial guidance in our review–as well as the current split on this Court as to whether, under Indiana Appellate Rule 7(B), an appellant must satisfy one or two prongs to obtain revision of a sentence as inappropriate.

[19] As the majority observes, panels of this Court have often cited a pre-*Anglemyer*[7] case for the proposition that a trial court's findings of aggravators and mitigators serve as an "initial guide" in our Rule 7(B) review for

---

[7] *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218.

inappropriateness. Indeed, this author has done so. *See Custance v. State*, 128 N.E.3d 8, 10 (Ind. Ct. App. 2019) ("We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate" (quoting *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006)). Although such nomenclature has been frequent, I would now be inclined to reject it, because it serves as a shorthand phrase suggesting that we are directly reviewing the trial court's work. We are not.

[20] In *Anglemyer*, the Court summarized the sentencing review framework:

> The imposition of sentence and the review of sentences on appeal should proceed as follows:
>
> 1. The trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence.
>
> 2. The reasons given, and the omission of reasons arguably supported by the record, are reviewable on appeal for abuse of discretion.
>
> 3. The relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse.
>
> 4. Appellate review of the merits of a sentence may be sought on the grounds outlined in Appellate Rule 7(B).

868 N.E.2d at 491. The language employed by our Supreme Court makes plain that we are "reviewing the merits of a sentence" and not the comprehensiveness of the sentencing statement, which need only be "reasonably detailed." *See id.* In short, although we give "due consideration" to the trial court's decision, App. R. 7(B), we are not conducting a line-item review of the articulated aggravators and mitigators. Because the "initial guidance" language might be read to suggest that we consider the trial court's sentencing statement as a pronouncement of findings and conclusions, perhaps in some manner constraining our 7(B) review akin to a search for clear error, I agree that we are not well served by continuing to repeat it.

[21] The focus of our 7(B) review is succinctly defined: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." But within this Court there exists a split of opinion as to whether sentence revision may be obtained only upon showing inappropriateness under both prongs. In *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015), our Indiana Supreme Court offered the following guidance: "Such deference [to the trial court judgment] should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)."

Some judges construe the Court's use of the word "and" in the governing Rule and in caselaw to mean that a successful appellant must identify compelling positivity related to both the nature of the offense and to the appellant's character. *See Landske v. State*, WL 2479704 (Ind. Ct. App. 2020). Other judges are persuaded that an appellant is not required to independently show revision is warranted with reference to each prong, because the role of this Court is to "ultimately balance" what is known of the nature of the offense and the character of the offender. *Connor v. State*, 58 N.E.3d 215, 218 (Ind. Ct. App. 2016). I, like the majority here, view this ultimate balancing as our role in 7(B) review. Although we must consider the evidence relative to each prong, the appellant need not necessarily prove inappropriateness as to each prong. Indeed, the statutory definition of certain offenses (such as simple possession) may not allow for portrayal of the offense in a positive light. That said, we await and invite further guidance from our Supreme Court.